729 So.2d 995 (1999)
FLORIDA POWER & LIGHT COMPANY, Appellant,
v.
Vincent TURSI and Harriet Tursi, his wife, Appellees.
No. 98-0616.
District Court of Appeal of Florida, Fourth District.
March 31, 1999.
*996 Robert O. Dugan, Miami, and Marjorie Gadarian Graham, P.A., Palm Beach Gardens, for appellant.
K.P. Jones of Jones & Wolfe, Fort Lauderdale, for appellees.
KLEIN, J.
Florida Power & Light Company (FP & L) appeals a verdict in favor of plaintiff, arguing that the trial court misapplied Frye v. United States, 293 F. 1013 (D.C.Cir. 1923), and erroneously allowed a physician to give an opinion on causation. We conclude that the physician was qualified to testify about causation based on his knowledge and experience and that Frye was thus inapplicable. We do reverse for a new trial on apportionment of liability, because the court erred in not allowing the jury to determine the negligence of a non-party.
In early 1992 an electrical transformer on FP & L's utility pole leaked liquid containing a harmful toxin known as polychlorinated biphenyles (PCB's) onto plaintiff who happened to be standing under it. When he felt the liquid on his skin he looked up, and it went into his eye. Paramedics who responded to a 911 call put plaintiff through a decontamination process at the site of the accident. He was then taken to a hospital where he was evaluated for PCB exposure. His right eye was red at that time, and he soon developed conjunctivitis.
About six months after the accident plaintiff began developing some conditions on or under his skin, some of which were surgically removed. About four years after the accident, and after plaintiff had already filed suit against FP & L for the skin problems, he developed a cataract in the eye which had been injured in the accident. Plaintiff added that claim to his lawsuit. The first issue FP & L raises is whether the trial court erred in permitting the ophthalmologist who treated and removed the cataract to testify that the cataract was caused by the transformer fluid.
Pursuant to FP & L's motion, the trial court conducted a hearing prior to trial in order to determine whether the testimony of the ophthalmologist met the standard for scientific testimony of Frye, which is the test for the admission of scientific evidence presently followed in Florida. Ramirez v. State, 651 So.2d 1164 (Fla. 1995). The trial court found that the testimony was admissible, a conclusion which FP & L argues is erroneous because of the absence of scientific proof that cataracts can be caused by PCB's. We conclude that this is not the type of testimony to which Frye should have been applied.
The ophthalmologist, who has treated thousands of cataract patients, testified that there are many causes of cataracts, including aging, congenital, x-rays, radiation, exposure to chemicals, and other trauma. He testified that chemical agents can cause cataracts, and *997 that, depending on the concentration, the cataracts can take from weeks to years to develop. He was able to rule out a number of other causes of cataracts, such as exposure to sunlight, because of the fact that plaintiff only had the cataract in one eye. He testified based on his knowledge and experience that, considering the relatively young age (60) of the plaintiff, the cataract was, within a reasonable medical certainty, caused by the transformer liquid.
In Flanagan v. State, 625 So.2d 827 (Fla. 1993), the Florida Supreme Court reviewed an en banc decision of the first district[1] which involved the admissibility of a psychologist's opinions which were based on sexual offender profile evidence. In discussing Frye, the court explained:
Of course, not all expert testimony must meet this test in order to be admissible. As discussed by Judge Ervin below, 586 So.2d at 1109-11, pure opinion testimony, such as an expert's opinion that a defendant is incompetent, does not have to meet Frye, because this type of testimony is based on the expert's personal experience and training. While cloaked with the credibility of the expert, this testimony is analyzed by the jury as it analyzes any other personal opinion or factual testimony by a witness. Profile testimony, on the other hand, by its nature necessarily relies on some scientific principle or test, which implies an infallibility not found in pure opinion testimony. The jury will naturally assume that the scientific principles underlying the expert's conclusion are valid. Accordingly, this type of testimony must meet the Frye test, designed to ensure that the jury will not be misled by experimental scientific methods which may ultimately prove to be unsound.
Id. at 828. The testimony of the treating ophthalmologist in the present case is pure opinion. It does not rely on a scientific principle or test which would have to comply with Frye.
FP & L loses sight of the forest for the trees when it focuses on the narrow issue of whether PCB's can cause cataracts, rather than the broader issue of whether this type of trauma could have ultimately resulted in a cataract. Unlike the cases applying the Frye test relied on by FP & L[2], this case involves one incident of trauma, an immediate injury, and a more serious injury developing four years later, at the site of the trauma. The ophthalmologist's opinion on causation was not based on "novel scientific evidence," Hadden v. State, 690 So.2d 573, 578 (Fla. 1997), but rather his experience and training. It was no more novel than an orthopedist testifying that a neck injury, which did not manifest itself with symptoms until four years after a rear-end collision, was caused by the accident. The trial court did not err in allowing him to testify.
We do agree with FP & L that the trial court erred in not permitting the jury to determine whether the manufacturer of the transformer was at fault, along with FP & L. FP & L alleged negligence by an unnamed manufacturer of the transformer in its answer. FP & L subsequently identified the manufacturer by name in answers to interrogatories long before trial, and presented evidence at trial from which a jury could have found the manufacturer at fault. Plaintiffs argue that FP & L was required to have identified the manufacturer by name in its answer, citing Nash v. Wells Fargo Guard Servs., Inc., 678 So.2d 1262, 1264 (Fla. 1996)(defendant must "plead as an affirmative *998 defense the negligence of the non-party and specifically identify the non-party").
We reject plaintiffs argument that FP & L was required to actually identify the name of the manufacturer in its answer where, as here, FP & L had made the identity of the manufacturer known on the record long before trial. We note that the trial court also rejected that argument, but rather ruled as it did because it erroneously concluded that there was no proof of negligence by the manufacturer of the transformer. We agree with plaintiffs that the non-party should be identified in the pleadings, but where, as here, there was no prejudice to plaintiffs, we do not believe that form should control over substance.
In Loureiro v. Pools by Greg, Inc., 698 So.2d 1262 (Fla. 4th DCA 1997), we held that the trial court erred in allowing the liability of non-parties to be determined by the jury, where a defendant's answer only alleged negligence by unnamed third parties. That case is distinguishable because the defendant did not identify the unnamed third parties until shortly before the trial, when it was too late for the plaintiff to depose them or join them in the lawsuit. In the present case plaintiffs make no argument that they did not have sufficient notice prior to trial of the actual identity of the non-party.
We therefore reverse for a new trial on apportionment of liability. Nash. The new trial will proceed as directed by the third district, under similar circumstances, in Shufflebarger v. Galloway, 668 So.2d 996, 998 (Fla. 3d DCA 1995). See also Schindler Elevator Corp. v. Viera, 693 So.2d 1106 (Fla. 3d DCA 1997).
POLEN and SHAHOOD, JJ., concur.
NOTES
[1] Flanagan v. State, 586 So.2d 1085 (Fla. 1st DCA 1991).
[2] E.I. DuPont De Nemours & Co., Inc. v. Castillo, 24 Fla. L. Weekly D448, ___ So.2d ___, 1999 WL 71598 (Fla. 3d DCA Feb.17, 1999)(admissibility of opinion that one time exposure to Benlate being sprayed on a field caused mother, who was seven weeks pregnant, to give birth to a child with severely underdeveloped eyes); Berry v. CSX Transp., Inc., 709 So.2d 552 (Fla. 1st DCA), rev. denied, 718 So.2d 167 (Fla. 1998)(admissibility of testimony that long-term exposure to organic solvents causes damage to brain and central nervous system); Centex-Rooney Constr. Co. v. Martin County, 706 So.2d 20 (Fla. 4th DCA 1997), rev. denied, 718 So.2d 1233 (Fla. 1998)(admissibility of testimony that toxic molds in newly constructed building caused adverse health effects); Christophersen v. Allied-Signal Corp., 939 F.2d 1106 (5th Cir. 1991)(admissibility of opinion that colon cancer was caused by long-time exposure to chemicals in battery factory where plaintiff was employed).