787 So.2d 894 (2001)
Donald J. DAVIS and Lois R. Davis, Appellants,
v.
CATERPILLAR, INC., a foreign corporation; and Kelly Tractor Co., a Florida corporation, Appellees.
No. 3D00-269.
District Court of Appeal of Florida, Third District.
May 2, 2001.
Rehearing and Rehearing Denied July 11, 2001.
*896 Stabinski & Funt, Miami; Bambi G. Blum, Miami, for appellants.
Heinrich Gordon Hargrove Weihe & James and John R. Hargrove and Robert C. Weill, Fort Lauderdale, for appellees.
Before GODERICH and SORONDO, JJ., and NESBITT, Senior Judge.
Rehearing and Rehearing En Banc Denied July 11, 2001.
NESBITT, Senior Judge.
On July 12, 1994, W. Jackson & Sons (herein, Jackson) was installing concrete pipe with a Caterpillar 235D Excavator. The machine, manufactured by Caterpillar, Inc., and leased to Kelly Tractor, Co., was "track-mounted," with a boom projecting off an upper structure which rotates. The excavator digs a trench, then lifts and lowers a section of pipe into the trench, and places fill under the sections of pipe in the trench. The excavator moves back and forth on its tracks and is equipped with a "travel alarm" that goes off when the tracks move in any direction. Donald J. Davis was working as a Jackson operator and placed several sections of drain pipe for installation along an excavated trench. The crew for the project may have been short that day. Davis was summoned to work as a "hill man" by foreman, Robert Jones. As "hill Man", Davis's task was to wrap cable around a section of pipe and attach it to the excavator's boom. As Davis was waiting for an opportunity to get in the area behind the excavator cab in order to put cable around a section of pipe, he saw the excavator move away, he went to roll the pipe into place, and he was hit.
Davis filed suit against Caterpillar, Kelly, Jackson, and supervisor, Jones. Prior to trial, the defendants moved to exclude or limit the testimony of engineering expert, Dr. Vaughn Adams. The motion was denied and the case proceeded. Adams testified regarding the safety of the excavator. *897 Defendants objected to Adams' opinions, claiming his lack of qualification. Caterpillar maintained that Adams' experience with excavators was limited solely to what he knew from being hired in litigation and that he had never worked for an excavator manufacturer. At the close of the plaintiffs' case[1], at the conclusion of the defendants' case, and again at the close of all the evidence, defendants moved for a directed verdict. All motions were denied, and the jury returned a verdict finding defendants Caterpillar and Kelly to be 15% negligent, Jackson to be 40% negligent, Jones to be 25% negligent, and Davis to be 20% negligent. Defendants moved for a judgment notwithstanding the verdict, renewing their argument that Adams was not qualified to render any expert opinions regarding the excavator. Caterpillar maintained that with Adams' testimony excluded, there would be no basis for the jury to find that the excavator was defectively designed. Considering this argument, the trial court agreed and granted defendants' motion. It excluded the testimony at issue and entered final judgment for the defendants.
Having granted the judgment notwithstanding the verdict, the trial court decided that if its ruling were reversed on appeal it would grant plaintiffs' motion for additur by increasing Mr. Davis' past pain and suffering award by $150,000 and his future pain and suffering award also by $150,000. The trial court also awarded $20,000 to Mrs. Davis for her past loss of consortium claim and $15,000 for her future loss of consortium claim.[2] Defendants accepted the additurs.
The primary issue on appeal is whether the trial court abused its discretion in excluding Adams' testimony and entering final judgment in favor of Caterpillar and Kelly.[3] In granting the j.n.o.v. the trial court called Adams unqualified, determined his ideas were novel and with insufficient scientific support[4], and decided his opinion was illogical. We conclude that the jury was not misinformed or misled and that there was no reason to put aside the jury's verdict in this regard.
It is true that it is generally within the trial court's discretion to determine a witness's qualifications to express an opinion as an expert, and the court's determination in this regard will not be reversed absent a clear showing of error. See, e.g., Geralds v. State, 674 So.2d 96, 100 (Fla. 1996); Ramirez v. State, 542 So.2d 352, 355 (Fla.1989); Johnson v. State, 438 So.2d 774, 777 (Fla.1983). In the instant case, however, there was simply no reason to conclude Adams, an industrial engineer, mechanical engineer, and human factors engineer, was unqualified to give his opinion on the matter at hand. Adams' training and experience qualified him to testify. The court did not elaborate upon the basis for its determination otherwise, but rather *898 went into a detailed explanation of why she disagreed with the expert's conclusion.
An expert is permitted to express an opinion on matters in which the witness has expertise when the opinion is in response to facts disclosed to the expert at or before the trial. See § 90.704, Fla. Stat. (1999); see also Capehart v. State, 583 So.2d 1009 (Fla.1991) (holding chief medical examiner, who based her opinion on autopsy report, toxicology report, evidence receipts, photographs of body, and all other paperwork filed in case, could testify regarding cause of death and condition of victim's body, although she did not perform autopsy). One of a trial judge's jobs is to prohibit unreliable expert testimony from reaching a jury. See Ramirez v. State, 651 So.2d 1164, 1167-68 (Fla. 1995).
In the instant case, in rejecting the expert's opinion, the court concluded that the expert's opinions failed to meet the test outlined in Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923), designed to ensure that a jury will not be misled by experimental scientific methods which may ultimately prove to be unsound. However as plaintiffs argue and defendants as much as concede, Adams' opinions did not rely on new or novel scientific evidence. See U.S. Sugar Corp. v. Henson, 787 So.2d 3 (Fla. 1st DCA 2000)(Frye test for admissibility of expert testimony is applied only to novel scientific evidence; that is, evidence in the "twilight zone" of science which is between the experimental and demonstrable stages.)
Rather, the expert simply testified that based on his experience, the excavator was unreasonably dangerous because it did not provide a means for monitoring its blind spot. Adams then outlined a number of simple mechanisms that could have corrected this deficiency. He pointed to blind area viewers, mirrors, two-tone alarms, and video cameras, all on the market and available and being used on other construction machinery. Also, Adams testified that he had seen other excavators with such devices. See Smith v. Ingersoll-Rand Co., 214 F.3d 1235 (10th Cir.2000); See also Flanagan v. State, 625 So.2d 827, 828 (Fla.1993); Florida Power & Light Co. v. Tursi, 729 So.2d 995, 997 (Fla. 4th DCA 1999)(ophthalmologist's opinion on causation not required to meet Frye standard because opinion was not based on novel scientific evidence, but rather expert's experience and training).
Furthermore, the subject matter of Adams' testimony was appropriate for expert testimony. See e.g. West v. Caterpillar Tractor Co., 336 So.2d 80, 83 (Fla. 1976)(court observing that "[t]he expert proof on the plaintiff's side, in essence, showed improper design and configuration of various parts of the grader obstructing visibility to the rear; absence of appropriate mirrors; and absence of available warnings on a machine created for rearward use; and design with a `blind spot' behind the operator").
Finally, there was nothing inherently illogical in the expert's conclusion. The excavator operator who hit Davis confirmed the machine had a blind spot. Davis said he was working in the blind spot when the incident occurred. Adams testified that the various devices mentioned above had been used on other types of construction equipment and feasibly installed on this excavator would have enhanced driver visibility or alerted Davis that the machine was moving rearward.
In sum, the expert was qualified, his testimony was based on relevant undisputed facts and did not involve any novel scientific principle, and his conclusion seems entirely logical in light of the facts. Accordingly, we conclude that the trial *899 court abused its discretion in excluding Adams' testimony and entering final judgment in favor of Caterpillar and Kelly. The trial court's order striking the expert testimony and entering the judgment j.n.o.v. reversed. Having so concluded, we now turn to the additurs ordered in the case.
Appellants argue that while the trial court identified the inadequacy of the awards at issue, the amount of the additurs ordered were woefully insufficient. We agree. Section 768.74(1), Florida Statutes (1997), authorizes additurs in those cases where the trial court determines that an award of damages is "inadequate in light of the facts and circumstances which were presented to the trier of fact." Section 768.74 did not alter the longstanding principles governing a trial court's deference to a jury's assessment of damages. See Poole v. Veterans Auto Sales and Leasing Co. Inc., 668 So.2d 189, 191 (Fla. 1996). However an additur is an appropriate remedy where a damage award is so inadequate as to shock the conscience of the court. Moreover, a trial court's determination regarding additur may be reversed upon a finding of a clear abuse of discretion. See Doughty v. Insurance Co. of N. Am., 701 So.2d 1225, 1226 (Fla. 4th DCA 1997); Valinzo v. Cem-Kam, Inc., 698 So.2d 359, 360 (Fla. 4th DCA 1997); Airstar, Inc. v. Gubbins, 668 So.2d 311, 312 (Fla. 4th DCA 1996).
As previously stated, the jury awarded Mr. Davis $50,000 for his past pain and suffering and $50,000 for future pain and suffering. The jury awarded Mrs. Davis zero for her loss of consortium claim. The lower court found these awards "shockingly low, wholly inadequate, unsupported by evidence and could not have been adduced in a logical manner by reasonable persons." The court also found that "[t]he amounts awarded did not bear a reasonable relation to the amount of damages proved and the injuries suffered by the parties."[5] The lower court added $150,000 to both Mr. Davis' awards and gave $20,000 to Mrs. Davis for her past loss of consortium and $15,000 for her future loss of consortium. We agree with the Davises' argument that these additur were wholly inadequate in light of the evidence.
The damage testimony was adduced from the Davises and the medical personnel and physicians who treated them. Mr. Davis was dragged under a 55 ton machine and suffered a degloving injury of his leg. All of the skin and muscle was ripped from the bone and his foot was basically pulled off. His leg was amputated below the knee. He was in the hospital for over one month for surgery and rehabilitation, and spent a year in a wheelchair before he could be fitted with a prosthesis. He was *900 on morphine and in severe pain and suffered wound complication and necrosis. He went through several prostheses because his stump was painful, blistered, irritated and swollen.
Mr. Davis, a 62 year-old construction worker with an eighth grade education, can no longer bend, lift weight, or squat. His work disability is 100% and his impairment rating is 28%. It takes Mr. Davis half an hour to get dressed in the morning. He has gained weight from being unable to exercise, he is unable to work and he is depressed. He suffers from arthritic pain in his knees and phantom pain in his missing foot and leg. He suffers nightmares and flashbacks about the accident. He also suffers from sexual dysfunction. Many of the hobbies that he previously enjoyed, including hunting and fishing, he is now unable to do.
Mr. Davis will require plastic surgery for wound revision and possible skin grafting in the future. He has an increased susceptibility for infection and blistering of the stump and is at risk for an additional amputation. He will need ongoing medical care. He has loss of balance, altered gait, consequential back pain and a soreness in his upper body. As stated above, his altered body image has caused severe depression.
Mrs. Davis worked at a Wal-Mart store at the time of the incident. She visited her husband in the hospital every day for over a month. When he came home, she quit her job for two years to take care of him. She changed his dressings day after day, cleaned his wounds, massaged his leg, bathed him, helped him dress and took him to his numerous doctor's appointments. She designed and sewed pants with a zipper in the leg to make his dressing easier. Mrs. Davis is 70 years old. She continues to work because she now provides the family's sole financial support. Mr. Davis continues to be very dependent upon her. Mrs. Davis has suffered through her husband's irritability, frustrations, sexual dysfunction and nightmares, in addition to her own stresses. She is now the family's sole provider and caretaker. Considering these facts, we have no doubt that the additurs ordered did not sufficiently address the losses suffered.
Accordingly, the trial court's order striking the testimony of the Davises' expert and entering final judgment in favor of Caterpillar and Kelly Tractor is reversed. The case is remanded for a new trial on damages for Mr. Davis' pain and suffering claim and Mrs. Davis' loss of consortium claim.
NOTES
[1] Mrs. Davis brought a claim for loss of consortium.
[2] The jury had awarded Davis $50,000 for his past pain and suffering and $50,000 for his future pain and suffering, but nothing for the loss of consortium claim.
[3] The plaintiffs also argue that there was no basis for the jury's finding of employer Jackson's liability. We disagree. Evidence as to the employer's staffing and training was presented to the jury.
[4] The trial court cited to Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923)(expert opinion testimony relating to matters involving novel scientific evidence must be based upon scientific methods and principles that are generally accepted in the relevant scientific community and the burden is on the proponent of the expert evidence to establish by a preponderance of the evidence the general acceptance of the underlying scientific principles and methodology).
[5] Section 768.74 provides in pertinent part:

(5) In determining whether an award is excessive or inadequate in light of the facts and circumstances presented to the trier of fact and in determining the amount, if any, that such award exceeds a reasonable range of damages or is inadequate, the court shall consider the following criteria:
(a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the tier of fact;
(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.