871 So.2d 899 (2003)
Ronnie JONES and Sylvia Jones, Appellants,
v.
GOODYEAR TIRE & RUBBER COMPANY, Appellee.
No. 3D01-3583.
District Court of Appeal of Florida, Third District.
November 12, 2003.
Rehearing Denied May 12, 2004.
*900 Wetherington, Klein & Hubbart and Phillip A. Hubbart; Lauri Waldman Ross, for appellants.
Thornton, Davis & Fein, P.A., and Frederick J. Fein, and Kathleen M. O'Connor, for appellee.
Before SCHWARTZ, C.J., and GREEN and WELLS, JJ.
GREEN, J.
Ronnie Jones and his wife Sylvia, plaintiffs below, appeal a post-trial entry of a directed verdict for the defense and/or order for new trial as well as a pre-trial confidentiality order in their personal injury action against Goodyear Tire and Rubber Company ("Goodyear"). For the reasons that follow, we reverse and remand for a reinstatement of the jury's verdict and vacate the confidentiality order.

Facts
Jones, a tire mechanic for the Dade County Public Schools ("DCPS"), received on-the-job training from his co-worker, Patrick Redding. Jones and Redding repaired the tires on DCPS vehicles, and made road service calls when necessary. Their jobs required them to completely service tires, including rebuilding them if necessary.
On October 18, 1994, Jones and Redding transported a school bus for repair to a northeast facility. Jones noticed that one of the bus' interior tires was low on air.[1] Jones, using a hydraulic jack, lifted the bus from the ground and checked the tire for a "hollow" sound, which would have indicated that the tire was flat. The tire did not sound hollow, nor did it have any nails or objects protruding from it. In addition, the tire contained approximately forty to fifty pounds of air pressure. Given these facts, both men assumed that the tire had a valve stem leak. These leaks are usually checked by filling the tire with air. Jones began filling the tire, which was still mounted on the bus, when suddenly the tire exploded. Jones was thrown back against a gate, and knocked unconscious. He sustained serious injuries, requiring four separate surgeries, including two surgical fusions of the spine. Jones sustained a 16% whole body impairment, severe brain damage and "intractable depression." He was also deemed unemployable.
Jones instituted this action against Goodyear, seeking personal injury damages for negligence in design, testing and/or failure to test, and failure to warn; and strict liability for a design defect in the tire.[2] Goodyear answered with a general denial and various affirmative defenses. Its answer was subsequently amended to add possible Fabre[3] defendants, including Jones' employer, DCPS.
On the first day of trial, Goodyear filed two motions in limine. The one relevant to this appeal sought a Frye hearing to *901 exclude the opinion testimony of Jones' only tire expert, Richard Baumgardner, on grounds that there was no underlying support for Baumgardner's testimony and consequently the testimony would be nothing but pure speculation.[4] The court denied the motion and permitted Baumgardner to testify.
Baumgardner, a tire engineer with 43 years of designing, inspecting, and testing experience, opined that there was a design defect in the Goodyear tire which caused "zipper failure."[5] He stated that the "flaw" in the Goodyear tire design was that there was too much of a difference between the thickness of the center portion of the sidewall of the tire and the areas above and below it. Baumgardner opined that the solution to the "zipper failure" problem was to either increase the thickness of the rubber at the "flex point" or to thin out other areas of the sidewall rubber to create a wider flex area.
Goodyear's expert, Charles Gold, on the other hand, opined that the applicable tire was not defectively designed and that no tire has been created which would not "zipper." He stated that zipper failure occurs when a tire has been under-inflated or flat for a significant period of time. It was Gold's opinion that Jones' injuries were caused by using unsafe procedures to reinflate a damaged tire.
At the close of Jones' case, and at the close of all the evidence, the trial court "reserved" ruling on a defense motion for directed verdict, although no such motion had been presented to the court. The case was thereafter submitted to the jury on a special interrogatory verdict. The jury found Goodyear liable for strict liability and negligence, and awarded Jones $1,800,000 in damages.[6] The jury found no fault on Jones' part, but attributed 80% fault to Goodyear and 20% to DCPS.
Goodyear filed a post-trial motion for directed verdict and new trial. The motion for directed verdict asserted that Jones did not present sufficient evidence of Goodyear's negligence and strict liability because Baumgardner's opinions were unsupported, speculative and inadmissible. In addition, Goodyear claimed that there was no evidence to support a finding of its negligent failure to warn. At the hearing on the post-trial motions, Goodyear renewed its motion in limine, seeking to exclude Baumgardner's testimony on the ground that it was inadmissible under Frye. Goodyear contended that Baumgardner had offered opinions which involved "new and novel scientific evidence," because the redesigning of a tire involves the scientific principles of engineering, physics and chemistry. The trial court granted Goodyear's motion for directed verdict specifically finding that:
a. The testimony of Plaintiffs' expert witness [H. Richard] Baumgardner, was incompetent, speculative and inadmissible pursuant to Frye v. United States, 293 F. 1013 (D.C.Cir.1923) and Florida Statute 90.702 and therefore Plaintiffs' proof of their negligence and strict liability claims, Counts I and II of the complaint, was legally insufficient.

*902 b. There was a lack of evidence submitted at trial upon which the jury could lawfully find that Goodyear failed to warn; and
c. There was a lack of evidence submitted at trial upon which the jury could lawfully find that the subject tire was defective in any way.
Moreover, the trial court's order also granted Goodyear's motion for new trial on grounds that:
b. The verdict was against the manifest weight of the evidence and was motivated more by the jurors' sympathies than by the testimony and the evidence presented at trial.
c. There was a lack of evidence presented at trial to warrant a jury instruction on negligent failure to warn; and
d. Goodyear was prejudiced in that it was not permitted to call Mr. Edward Martino as a witness at trial.
This appeal followed. For the following reasons, we reverse.

Law
The Directed Verdict
It is well-settled that in determining a motion for directed verdict, all evidence and reasonable inferences must be viewed in the light most favorable to the non-moving party. Woods v. Winn Dixie Stores, Inc., 621 So.2d 710, 711 (Fla. 3d DCA 1993). If there are conflicts in the evidence or in inferences drawn from it, the issue is a factual one for the jury, not a legal matter to be resolved by the court. Blake v. Hi-Lu Corp., 781 So.2d 1122, 1124 (Fla. 3d DCA 2001).
In his complaint Jones alleged causes of action for both negligence and strict liability. The negligence count was premised on two different theories: 1) failure to warn, and 2) negligent design. The strict liability count, on the other hand, alleged that Goodyear placed a product into the marketplace which was unreasonably dangerous to the user. The jury found in Jones' favor on both counts. Thus, there must be insufficient evidence on both counts to support a directed verdict. See Teichner & Mella, P.A. v. Butler, 600 So.2d 507, 508 (Fla. 3d DCA 1992).
Under Florida law expert opinions involving "new or novel scientific techniques" must meet the test set forth in Frye v. United States, 293 F. 1013 (D.C.Cir.1923). See Spann v. State, 857 So.2d 845, 852 (Fla. 2003). This test requires the scientific principle or discovery underlying an expert's opinion to be "sufficiently established to have gained general acceptance in the particular field in which it belongs." Frye, 293 F. at 1014. See also Hadden v. State, 690 So.2d 573, 576 (Fla.1997) (stating that the Frye test requires the scientific principles undergirding an expert's opinion be found by the trial court to be generally accepted by the relevant members of its particular field). By definition, however, the Frye test is only applicable to cases where an expert's opinion is based upon new and/or novel scientific evidence. See U.S. Sugar Corp. v. Henson, 823 So.2d 104, 109 (Fla.2002); Brim v. State, 695 So.2d 268, 271-72 (Fla. 1997). "Therefore, in the vast majority of cases, no Frye inquiry will be required because no innovative scientific theories will be at issue." Henson, 823 So.2d at 109; see also Spann, supra, 857 So.2d at 852.
Expert opinion that is based on an expert's own experience or training, however, is deemed "pure opinion." Holy Cross Hosp., Inc. v. Marrone, 816 So.2d 1113, 1117 (Fla. 4th DCA 2001)("`Pure opinion' refers to expert opinion developed from inductive reasoning based on the experts' own experience, observation, or research, whereas the Frye test applies *903 when an expert witness reaches a conclusion by deduction, from applying new and novel scientific principle, formula, or procedure developed by others."). An expert's pure opinion testimony does not have to pass the Frye test because the testimony is based on the expert's personal opinion. Rickgauer v. Sarkar, 804 So.2d 502, 504 (Fla. 5th DCA 2001).
In this case, Baumgardner's testimony made no reference to a "new or novel scientific principle or discovery." Instead, Baumgardner personally inspected the tire at issue and opined that based upon his 27 years' experience in designing and testing tires with Firestone Tire and Rubber Company and 16 additional years as a consultant in tire failure, he believed that the tire in question exploded because of a design defect which led to "zipper failure," and that this "defect" could have been prevented had the tire been designed differently. This testimony does not involve a novel scientific principle or discovery. Thus, the trial court's exclusion of Baumgardner's testimony for not meeting the Frye test was an abuse of discretion.[7]
In our decision in Davis v. Caterpillar, Inc., 787 So.2d 894 (Fla. 3d DCA 2001), review dismissed, 817 So.2d 845 (Fla.2002), a case procedurally similar to this case, we found that
[I]n rejecting the expert's opinion, the [trial] court concluded that the expert's opinions failed to meet the test outlined in Frye ... designed to ensure that a jury will not be misled by experimental scientific methods which may ultimately prove to be unsound. However as plaintiffs argue and defendants as much as concede, [the expert's] opinions did not rely on new or novel scientific evidence....
* * *
In sum, the expert was qualified, his testimony was based on relevant undisputed facts and did not involve any novel scientific principle, and his conclusion seems entirely logical in light of the facts. Accordingly, we conclude that the trial court abused its discretion in excluding [the expert's] testimony and entering final judgment in favor of [the defendants]. The trial court's order striking the expert testimony and entering the judgment ... [is] reversed.
787 So.2d at 898-99. This same reasoning is applicable to the case at bar and accordingly we reverse the directed verdict.[8]
The Order for New Trial
After granting Goodyear's motion for directed verdict the trial court was initially inclined to deny the motion for new trial, yet eventually granted it stating:
The Court: ... I would grant a new trial on the same grounds [as the directed verdict]....
Counsel for Jones: Which is the competency as to Mr. Baumgardner?
The Court: And the validity, yeah.
Counsel for Jones: Of his opinion?
The Court: Of his opinion.
* * *
Counsel for Goodyear: There is one more issue that you've not addressed and that has to do with the failure to *904 warn issue, the instruction, and our not being able to call an additional witness, and we would submit that that is also supportable grounds for new trial.
The Court: Well, I possibly was in error in letting [the failure to warn] issue go... to the jury.... I don'tquite frankly, I don't think there was a failure to warn. I don't think there's any testimony in this record that shows that there was no failure to warn.
It's true that they might not have warned the individuals.
* * *
Counsel for Jones: Your Honor is holding there was no duty to warn?
The Court: There was no dutywell, there may have been a duty to warn its dealers, which the testimony was they did.
The written order of the court, however, reflects somewhat different findings.[9]
As the first ground for awarding a new trial, the court adopted the reasoning relied upon for the directed verdict. Since we have found that reasoning to be reversible error, we find the same here.
The second ground, contained in the order for new trial, claims that the verdict was "against the manifest weight of the evidence and was motivated more by the jury's sympathies than by the testimony and the evidence...." The order, however, gives no reasons or specifics to support this finding. This deficiency renders the order defective and reversible. See Brown v. Estate of Stuckey, 749 So.2d 490, 497 (Fla.1999)("When a trial judge grants the motion for a new trial, he or she must articulate the reasons for the new trial in the order."). See also Wackenhut Corp. v. Canty, 359 So.2d 430, 436 (Fla.1978)(upholding district court's reversal of trial court's grant of new trial where trial order did not explain why verdict was excessive). Moreover, the trial court's oral pronouncements regarding the granting of a new trial did not include a finding that the "verdict was against the manifest weight of the evidence." Thus, we find that the court abused its discretion in granting a new trial based on this finding. See Midtown Enters., Inc. v. Local Contractors, Inc., 785 So.2d 578, 582-83 (Fla. 3d DCA 2001)(finding that where oral pronouncements of trial court only referred to evidentiary errors, trial court abused its discretion in granting new trial on basis that verdict was against manifest weight of evidence).
As its third ground, the court found that it had given a jury instruction on failure to warn which was not warranted by the evidence. This ground is not supported by any reasoning, either oral or written, and thus is also defective. See Gould v. Nat'l Bank of Fla., 421 So.2d 798, 803 (Fla. 3d DCA 1982)(holding that trial court must give express reasons that support its findings for a new trial); Travelers Indem. Co. v. Hicks, 363 So.2d 628, 629 (Fla. 3d DCA 1978) ("[O]rders granting motions for new trial should articulate reasons for so doing so that appellate courts may exercise proper appellate review."). See also Brown v. Estate of Stuckey, supra. Moreover, a review of the record evidence shows that Jones was entitled to the standard jury instruction on failure to warn.[10]See LaTorre *905 v. First Baptist Church of Ojus, Inc., 498 So.2d 455, 456 (Fla. 3d DCA 1986) (holding that a party is entitled to a jury instruction on his/her theory of the case when the evidence, viewed in light most favorable to that party, supports the theory regardless of whether the theory is controverted by opposing party.).
Finally, we conclude that the record does not support the trial court's determination that Goodyear was prejudiced by its inability to call Mr. Martino as a witness. In its motion for a new trial, Goodyear claimed that "Mr. Martino was the one Goodyear witness through which it would present its failure to warn defense." However, Martino's proffered deposition testimony showed that Goodyear furnished product service bulletins to its dealers, including Martino, but that Martino did not pass these bulletins on to his customers, such as DCPS, Jones' employer. Thus, the admission of this testimony would have negated Goodyear's defense that it had warned its customers. Accordingly, the exclusion of this testimony cannot form the basis for a new trial. See Katos v. Cushing, 601 So.2d 612 (Fla. 3d DCA 1992)(finding test for harmful error regarding evidentiary ruling is whether it altered the outcome of the trial).
Moreover, the court's oral pronouncement regarding Martino's testimony is in direct conflict with its written finding of prejudice. At the hearing, the court specifically stated:
I don't know what difference [the exclusion of Mr. Martino's testimony] will make on the failure to warn because ... the evidence in this trial shows that [Goodyear] did give the warnings that they had an obligation to give, i.e., to their dealers.
For this reason alone this portion of the order should be reversed. See Bassett v. Saunders, 835 So.2d 1198, 1201 (Fla. 1st DCA 2002)("[A] written order or final judgment must conform to the oral pronouncement of the trial court."); Goosby v. Lawrence, 711 So.2d 577, 579 (Fla. 3d DCA 1998)(finding reversal and remand required because of variances between oral pronouncements and written order).
Accordingly, like the directed verdict, the order for new trial is reversed and this case is remanded with directions to reinstate the jury's verdict and enter judgment in Jones' favor, together with prejudgment interest from the date of the jury's verdict. See Fla. R.App. P. 9.340(c).
The Confidentiality Order
Finally, the trial court, on Goodyear's motion, granted, over objection, a pre-trial confidentiality order that prohibited the parties and their counsel from disclosing Goodyear documents obtained during discovery.[11] Jones argues that this order should be vacated as it is violative of section 69.081(3), Florida Statutes (2001). This statute provides in pertinent part:
(3) Except pursuant to this section, no court shall enter an order or judgment *906 which has the purpose or effect of concealing a public hazard or any information concerning a public hazard, nor shall the court enter an order or judgment which has the purpose or effect of concealing any information which may be useful to members of the public in protecting themselves from injury which may result from the public hazard.
§ 69.081(3), Fla. Stat. (2001). To this end, "public hazard" has been statutorily defined as:
[A]n instrumentality, including but not limited to any device, instrument, person, procedure, product, or a condition of a device, instrument, person, procedure or product, that has caused and is likely to cause injury.
§ 69.081(2), Fla. Stat. (2001).
Since the jury clearly found that Jones was injured by the tire in question, the tire is deemed a "public hazard." Thus, pursuant to section 69.081(2), no order can be entered which would conceal information regarding this tire. Accordingly, we vacate said order.

Conclusion
Finding that the trial court abused its discretion in substituting its judgment for that of the jury, and that the jury's verdict was not unjust, we reverse both the directed verdict and motion for new trial granted in Goodyear's favor. See Michelin Tire Corp. v. Milbrook, 799 So.2d 248, 251 (Fla. 3d DCA 2001)("The role of the trial judge... is not to substitute his or her own verdict for that of the jury, but to avoid what, in the judge's trained and experienced judgment, is an unjust verdict."). We thus remand with directions to reinstate the jury's verdict and award prejudgment interest to the plaintiffs, starting at the date of said verdict.
In addition, we remand with the additional instruction that the pre-trial confidentiality order be vacated.
Reversed, remanded with directions.
NOTES
[1] School bus tires are mounted two to each axle, parallel without touching.
[2] Sylvia Jones also filed a claim for loss of consortium.
[3] Fabre v. Marin, 623 So.2d 1182 (Fla.1993).
[4] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).
[5] A "zipper" was defined at trial as circumferential upper sidewall fatigue failure, typically 10 to 20 inches in length. From the epicenter, the rupture continues in both directions due to the instant transfer of load to adjacent steel body cables until the stored energy from inflation pressure is dissipated. The occurrence of this rupture has been compared to the opening of a zipper.
[6] Sylvia Jones was awarded $210,000 for her loss of consortium claim.
[7] The United States Supreme Court has held that expert opinion testimony of a tire failure expert does not constitute "scientific testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).
[8] Moreover, Baumgardner's testimony was also admissible under section 90.702 because he was qualified to give an expert opinion, and his testimony assisted the jury in understanding the evidence. § 90.702, Fla. Stat. (2001).
[9] The order for new trial was drafted by Goodyear's attorneys and signed by the court.
[10] This instruction provided:

The issue for your determination on the claims of Ronnie Jones against Goodyear Tire & Rubber Company is whether Goodyear negligently failed to warn of a dangerous condition and risk which was known to Goodyear and which Ronnie Jones neither knew or should have known by the use of reasonable care and if so whether such negligent failure to warn was a legal cause of the injuries sustained by Ronnie Jones.
[11] This order provides in relevant part: Said documents shall not be given, shown, made available, discussed or otherwise communicated in any way to anyone other than:

a. the court or courts in which this litigation is being pursued;
b. the Plaintiffs or co-Defendant;
c. the attorneys of record for the Plaintiffs or co-Defendant, and their associated attorneys, including employees of such attorneys to whom it is necessary that the material be shown for purposes of the litigation; and
d. independent professional engineers, accident reconstruction or other independent experts retained by the attorneys of record for such Plaintiffs or co-Defendant to assist in the preparation of this litigation.