RAMIREZ, J.
Colin Orpe appeals a final judgment entered in a negligence action. Because the trial court would not allow Orpe to present the testimony of his expert witness at trial, we reverse.
Dr. Marc Wilson was Orpe’s sole liability expert witness. Orpe was injured while he was a passenger on Carnival Corporation’s vessel Holiday when his cabin bathroom door swung shut and severed a portion of his finger. The door opened outward and a magnetic device on the adjacent wall was designed to hold the door against the adjacent wall. Orpe’s cabin-mate testified that the door had malfunctioned several times before the accident occurred.
At trial, Orpe sought to introduce Dr. Wilson’s testimony that a door dampener should have been used to slow down the rate at which the door closed; that an outward opening door without a door dampener is a hazard; that written warnings and a handrail in this area on a ship were necessary from an ergonomics, human factors and safety standpoint; that magnets lose their power over time; and that such devices must be regularly inspected and replaced. In the alternative, he suggested that the use of the hook-and-eye-type door latch, the usual type of latch used on cruise ships, was appropriate. In addition, he was to testify about general considerations for safety in equipping a ship’s bathroom and door.
The court excluded Dr. Wilson’s testimony ruling that he was not qualified to testify concerning the appropriate safety measures in a ship’s passenger cabin and that expert testimony on this issue was unnecessary. Carnival’s expert, however, was permitted to offer his opinion as to a magnet’s properties and characteristics, the force necessary to separate the door from the magnetic latch, and use of dampeners on cruise ship doors. The jury awarded Orpe $42,233.62, an award that is unchallenged, but it found Carnival 20% negligent and Orpe 80% comparatively negligent. The trial court denied Orpe’s motion for a new trial based on the exclusion of his sole expert witness.
“[I]t is generally within the trial court’s discretion to determine a witness’s qualifications to express an opinion as an expert, and the court’s determination in this regard will not be reversed absent a clear showing of, error.” Davis v. Caterpillar, Inc., 787 So.2d 894, 899 (Fla. 3d DCA 2001). In addition, the proper subject matter for expert testimony is within the trial court’s discretion. Angrand v. Key, 657 So.2d 1146, 1149 (Fla.1995). Here, however, the trial court should not have excluded Dr. Wilson’s testimony. The subject matter of the testimony, which is beyond the common understanding of *931 the jury, would have aided the fact-finder in resolving disputed issues, and the expert was qualified to opine on the matter. § 90.702, Fla. Stat. (2004). This was emphasized by the trial court’s ruling allowing the defense expert to testify on basically the same subjects on which it had disqualified plaintiffs expert.
It is beyond peradventure that Dr. Wilson was qualified to testify on the subject of ship safety by virtue of his education, training and experience. In addition to a Bachelor’s Degree in nuclear physics, a Master’s Degree in mechanical engineering, and a Doctorate Degree in engineering, with a specialty in advanced marine vehicles, Dr. Wilson, an experienced ship builder, is board certified in ergonomics. He is presently a First Engineer in the American Merchant Marine. He assisted in drafting the American Society of Testing Materials Standards for merchant vessels, and served as a Coast Guard senior marine safety inspector. He has written numerous articles on human factors and safety on vessels. Furthermore, he has taught engineering and physics at the university level.
During defense counsel’s voir dire examination of Dr. Wilson, Orpe’s counsel stated that Dr. Wilson was being offered as an expert on ergonomics on ships. Orpe’s counsel stated that they were not offering his testimony to say he “measured the magnetic pull of the magnet” and that they were “bringing him in to talk about what you need on a bathroom door on a ship and why you need it.” Although Dr. Wilson never visited the accident area on the ship, by the time of Dr. Wilson’s pre-trial deposition, he had viewed photographs of the subject door, latch and bathroom. Furthermore, he personally interviewed Orpe and read his deposition transcript and read Hahn’s affidavit. He had been advised of Orpe and Hahn’s testimony regarding how the accident occurred and that there were no handrails or warnings in the bathroom.[1] In addition, at the time of his deposition, Dr. Wilson had seen photographs of a bathroom door in a cabin of a competing cruise line, Celebrity Cruises. This door contained a “door dampener” such as here. He further viewed Carnival’s video tape of the accident area, previously had inspected passenger bathroom doors on this same vessel, the HOLIDAY, and was familiar with the bathroom doors. Dr. Wilson testified that ergonomics is based primarily on prior research and that there are ample studies on different types of door closure devices, latching devices and dampeners. Dr. Wilson testified that he was able to give opinions from an ergonomic and safety point of view here without having personally viewed the subject accident scene based on the photographs, which showed that the door did not have a dampener, showed the door’s magnetic latch at the bottom of the door, and showed there was no warning or safety handrail inside the bathroom or on the door. Dr. Wilson’s experience and education afforded him knowledge of how magnets work and whether magnets can lose power. See Davis, 787 So.2d at 897-99; Int’l Ins. Co. v. Ballon, 403 So.2d 1071, 1076 (Fla. 4th DCA 1981).
The proffered testimony was a proper subject for expert testimony. The issue of the need for certain safety measures in a ship’s passenger cabin, including written warnings, bathroom handrails, regular in *932 spections, as well as safety mechanisms to secure doors and to prevent swinging and sudden closing of doors in a maritime setting, is not a subject within a juror’s ordinary knowledge. Dr. Wilson was prepared to describe and evaluate the use of door stoppers, dampeners, and closure devices aboard cruise ships. His specialized knowledge of such safety measures in that context would have aided the jury in understanding the disputed issue of Carnival’s negligence. See Davis, 787 So.2d at 894; CSX Transp., Inc. v. Whittier, 584 So.2d 579 (Fla. 4th DCA 1991); see also Courtland Group, Inc. v. Phillips Gold & Co. 876 So.2d 629 (Fla. 3d DCA 2004); cf. Roseman v. Town Square Ass’n, 810 So.2d 516 (Fla. 4th DCA 2001)(exclusion of condominium expert’s testimony as to whether association should have ensured that the door closed at a slower speed proper as that issue is within the common knowledge and experience of the jury).
Therefore, the trial court erred in ruling that Dr. Wilson was not qualified to testify, and that the subject matter of his testimony was within the common knowledge of the jury. Any deficiency in his testimony is a subject for impeachment or reduction in weight rather than an issue of admissibility. See Lombard v. Executive Elevator Serv., Inc., 545 So.2d 453 (Fla. 3d DCA 1989); Dragon v. Grant, 429 So.2d 1329 (Fla. 5th DCA 1983); H.K. Corp. v. Miller, 405 So.2d 218 (Fla. 3d DCA 1981); see also Fla. Dep’t of Transp. v. Armadillo Partners, Inc., 849 So.2d 279 (Fla.2003); Anderson v. State, 863 So.2d 169, 179-81 (Fla.2003), cert. denied, 541 U.S. 940, 124 S.Ct. 1662, 158 L.Ed.2d 363 (2004).
The exclusion of Dr. Wilson’s testimony was patently prejudicial. He was Orpe’s sole liability expert witness, making his testimony critical. Absent his testimony, Orpe could only establish Carnival’s negligence through his own lay testimony. The jury’s finding that Carnival was 20% negligent and that Orpe was 80% comparatively negligent demonstrates that his testimony failed to counter successfully Carnival’s expert’s testimony. Accordingly, we reverse and remand the cause for a new trial on liability.
Reversed and remanded.
WELLS, J., concurs.

. Contrary to the trial court's statement, the expert did not base his opinion solely on information he received from Orpe. Furthermore, it was entirely permissible for Dr. Wilson to rely on the eyewitness accounts of the accident in formulating his opinion. See Sikes v. Seaboard Coast Line R.R., 429 So.2d 1216, 1222 (Fla. 1st DCA 1983); § 90.704, Fla. Stat. (2004).