SHEPHERD, C.J.
Osmany Anthony Perez, a minor, by and through his mother and next friend, Maria Franco Perez, appeals an adverse summary judgment in a negligence case rendered after the trial court struck the only medical expert testimony linking his premature birth, resulting surgeries, and developmental deficits to workplace stress. The workplace stress arose from the alleged failure of Maria’s employer, Bell South Telecommunications, Inc., to limit her work hours to forty hours a week and allow frequent bathroom breaks. The trial court found the testimony to be inadmissible under Frye v. United States, 293 F. 1013 (D.C.Cir.1923). Since then, the Florida Legislature has amended the Florida Evidence Code to employ the United States Supreme Court’s more recently promulgated “Daubert test,”[1] to gauge the admissibility of expert testimony in the stead of the older “Frye test.” After obtaining supplemental briefing from the parties on the applicability of the Daubert test to the facts of this case, we find affirmance would be in order under either the former or more recently adopted statutory test.[2] A brief summary of the factual and procedural background of the case is necessary to explain our decision.
Factual and Procedural History
Maria Franco Perez became pregnant with her first child, Osmany Anthony Perez, while employed as a call center operator by appellee, Bell South. She was twenty-six years old at the time, and her treating physician, Dr. Isidro Cardella, a board-certified obstetrician and gynecologist, classified Ms. Perez’s pregnancy as “high risk” at the time of her first visit to his office on May 5, 2004. The visit concluded with Dr. Cardella recommending a week of bed rest, owing to Ms. Perez’s report of vaginal spotting.
Ms. Perez’s prior medical history indicated several conditions and procedures which contributed to her high-risk pregnancy. In the years before, she had undergone gastric surgery due to obesity, which included the placement of gastric bands around her stomach to reduce intake. Despite the gastric surgery, Ms. Perez remained obese. Additionally, Ms. Perez had suffered two herniated discs, had back surgery, and had her gall bladder removed prior to her pregnancy with Os-many Perez.
At Ms. Perez’s office visit on July 80, 2004, Ms. Perez reported being “put[ ] under a lot of stress” at work. Dr. Cardella gave her a note for her employer stating “Patient can only work a max of 40 hours a week due to high risk pregnancy” and “[pjlease allow frequent bathroom breaks.” On August 11, 2004, Ms. Perez was fired for non-performance. Two days later, on August 13, 2004, Ms. Perez suffered a placental abruption[3] and delivered her *495 child, Osmany Anthony, twenty weeks early. Dr. Cardella opined in his deposition that workplace stress, exacerbated by Bell South’s alleged refusal to accommodate Ms. Perez’s medical condition, was the causal agent of the abruption and early delivery of her son with medical consequences.[4],[5] Dr. Cardella’s testimony is the only testimony linking Osmany’s premature birth to Bell South.
However, Dr. Cardella testified there was no way of ever knowing for sure what caused Maria’s placental abruption.[6] In fact, Dr. Cardella testified that his conclusions were purely his own personal opinion, not supported by any credible scientific research:
Q. Have there been any studies that you’re aware of that have shown stress to be a factor in determining the likelihood of a placental abruption?
A. Studies, no, but I have my opinion about that.
Q. All right, and we’ve talked about that.
A. Correct.
Q. My question is have there been any, do you know of any studies that have shown a connection between stress and placental abruption?
A. No, sir.
Q. Do you know of any medical literature that shows a correlation between stress and placental abruption?
A. No, sir.
Q. Do you know of any individual in your field that has spoken at a medical meeting or society or convention and has stated that stress causes placental abruption?
A. No, sir.
Q. You taught at the University of Miami?
A. Yes, sir. I did.
Q. Medical school?
A. During the residency program I was an attending physician and I taught the residents. Once in awhile [sic] we’d give a lecture to the medical students.
Q. Okay. So the teaching you did was to?
A. Residents.
Q. Fellow residents?
A. No, no, no. I had already graduated and I was the attending physician.
Q. When you were giving those talks, did you ever give a talk where you said there’s a correlation between stress and placental abruption?
A. No, sir.
Q. Have you ever heard of anybody making that statement?
A. I don’t recall.
*496 Q. Okay. You said you have an opinion?
A. Yes, sir.
Q. What is your opinion? This is your personal opinion?
A. Yes, sir. It is; after 21 years of practice, absolutely. If stress can cause a cardiac arrest, causing your blood pressure to go up, to go high, I’m sure there may very well be a correlation between placental abruption and stress,
(emphasis added).[7]
When asked to explain the basis of his opinion in this case, the only rationale Dr. Cardella could muster was that Ms. Perez worked during her first pregnancy, but did not work during the pregnancy leading to the birth of her second child on October 26, 2007.[8] This analysis, argue the appellants, comprises an admissible differential diagnosis supporting Dr. Cardella’s workplace stress theory of placental abruption.
The trial court disagreed. It struck Dr. Cardella’s opinion as inadmissible under Frye. A few months thereafter, the trial court granted Bell South’s motion for summary judgment for failure of the plaintiff to proffer admissible evidence to prove causation. Ms. Perez asserts on appeal that the testimony is admissible as “pure opinion” testimony under Marsh v. Va-lyou, 977 So.2d 543 (FIa.2007).
Analysis
The admissibility of expert testimony in this state is governed by section 90.702 of the Florida Evidence Code. Until recently, there were two avenues under this rule to the admissibility of expert testimony under Florida law. First, if the proposed expert testimony espoused a “new or novel” scientific theory, principle or discovery, then “the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the field in which it belongs.” See Marsh, 977 So.2d at 546 (quoting Frye, 293 F. at 1014) (emphasis added). This path to admissibility is commonly known as the “Frye test.” In Frye, the “thing” the D.C. Circuit found to lack “general acceptance” in its field was the result of a “systolic blood pressure deception test,” an early polygraph. Id.
The second path to admissibility of expert testimony until recently was the “pure opinion” path. Under this path, if the proposed testimony is not “new or novel,” but instead is based upon the expert’s personal experience, observation, and training, the Frye test does not apply to the ultimate opinion of an expert, so long as the methods used to reach the opinion were generally accepted scientific methods under Frye. See Marsh, 977 So.2d at 548-49. Examples of expert testimony found admissible as “pure opinion” include: testimony of a neurologist, based upon clinical experience alone, that the failure of physicians to perform a caesarian operation on a mother in labor caused brain damage to her child at birth, Gelsthorpe v. Weinstein, 897 So.2d 504, 510 (Fla. 2d DCA 2005); testimony of an *497 ophthalmologist, based on experience and training, that the exposure of an eye to polychlorinated biphenyles (PCB’s) causes cataracts, Florida Power & Light Co. v. Tursi, 729 So.2d 995, 996-97 (Fla. 4th DCA 1999); testimony of medical experts of recognized relationship or association between trauma and the onset of fibro-myalgia, based on clinical experience, State Farm Mut. Auto. Ins. Co. v. Johnson, 880 So.2d 721, 722-23 (Fla. 2d DCA 2004); see generally 24A Fla. Jur. Evidence, § 1104.[9]
In 2013, the Florida legislature amended section 90.702 of the Florida Evidence Code “to adopt the standards for expert testimony in the courts of this state as provided in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)” and as “reaffirmed and refined” by both General Electric Co. v. Joiner, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Ch. 2013-107, § 1, Laws of Fla. (2013) (Preamble to § 90.702). In so doing, the Legislature expressed its intent to “prohibit in the courts of this state pure opinion testimony as provided in Marsh v. Valyou, 977 So.2d 543 (Fla.2007).” Id. On July 1, 2013, these revisions to section 90.702 went into effect, changing Florida from a Frye jurisdiction to a Daubert jurisdiction.[10]
The Daubert Test
Although there has been a healthy debate among courts and commentators over whether the Daubert standard for admissibility of expert testimony is more lenient or more strict than the Frye standard which it displaced two decades ago in the federal courts and in some state courts thereafter, the Florida Legislature has settled that debate for the trial and appellate courts of this state. It is the express intent of the Legislature that the courts of this state interpret and apply the principles of expert testimony in conformity not only with Daubert v. Merrell Dow Pharmaceuticals, but also with General Electric Co. v. Joiner and Kumho Tire Co., Ltd. v. Carmichael as well. Ch. 2013-107, § 1, Laws of Fla. (2013). Thus, the Dau-bert test applies not only to “new or novel” scientific evidence, but to all other expert opinion testimony. See Kumho Tire, 526 U.S. at 147-49, 119 S.Ct. 1167 (“The initial question before us is whether this basic gatekeeping obligation applies only to ‘scientific’ testimony or to all expert testimony. We, like the parties, believe that it applies to all expert testimony.”). Expert testimony that might otherwise qualify as “pure opinion” testimony is expressly prohibited. Ch. 2013-107, § 1, Laws of Fla. (2013). The legislative purpose of the new law is clear: to tighten the rules for admissibility of expert testimony in the courts of this state.[11]
*498 Moreover, section 90.702 of the Florida Evidence Code indisputably applies retrospectively. See Window, v. State, 656 So.2d 432, 439 (Fla.1995) (holding that a statute which only relates to the admission of evidence is procedural in nature and does not violate the prohibition against ex post facto laws); Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla.1994) (“Procedural or remedial statutes ... are to be applied retrospectively and are to be applied to pending cases.”). Although the revisions to section 90.702 came into force after the filing of this appeal, we apply them retrospectively to the facts of this case. We are not the first district court to do so. See Conley v. State, 129 So.3d 1120, 1121 (Fla. 1st DCA 2013).[12]
Under Daubert, “the subject of an expert’s testimony must be ‘scientific knowledge.’” 509 U.S. at 590, 113 S.Ct. 2786. “[I]n order to qualify as ‘scientific knowledge,’ an inference or assertion must be derived by the scientific method.” Id. (emphasis added). The touchstone of the scientific method is empirical testing — developing hypotheses and testing them through blind experiments to see if they can be verified. Id. at 593, 113 S.Ct. 2786; see also Black’s Law Dictionary 1465-66 (9th ed. 2009) (“[Scientific method [is][a]n analytical technique by which a hypothesis is formulated and then systematically tested through observation and experimentation.”).[13] As the United States Supreme Court explained in Daubert, “This methodology is what distinguishes science from other fields of human inquiry.” Id. at 593, 113 S.Ct. 2786. Thus, “a key question to be answered” in any Daubert inquiry is whether the proposed testimony qualifies as “scientific knowledge” as it is understood and applied in the field of science to aid the trier of fact with information that actually can be or has been tested within the scientific method. Id. “General acceptance” [from the Frye test] can also have a bearing on the inquiry, as can error rates and whether the theory or technique has been subjected to peer review and publication. Id. at 593-594, 113 S.Ct. 2786. Thus, there remains some play in the joints. However, “general acceptance in the scientific community” alone is no longer a sufficient basis for the admissibility of *499 expert testimony. It “is simply one factor among several.” Marsh, 977 So.2d at 547 (citing Daubert, 509 U.S. at 594, 113 S.Ct. 2786). Subjective belief and unsupported speculation are henceforth inadmissible. See Daubert, 509 U.S. at 590, 113 S.Ct. 2786.
Dr. Cardella’s proposed testimony is inadmissible under Daubert. Dr. Car-della had never before related a placental abruption to workplace stress and knew of no one who had. There is no scientific support for his opinion. The opinion he proffers is a classic example of the common fallacy of assuming causality from temporal sequence. See McClain v. Metabolife Int’l, Inc., 401 F.3d 1233, 1243 (11th Cir.2005). In logic, the error is known as the post hoc, ergo propter hoc fallacy.[14] See Id. “Here, as elsewhere in the law, propter hoc must be distinguished from post hoc.” Hennigan v. Ouachita Parish Sch. Brd., 749 F.2d 1148, 1152 (5th Cir.1985).
We affirm the decision of the trial court.

. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. See Mortimer v. State, 100 So.3d 99, 104 (Fla. 4th DCA 2012) (finding a remand unnecessary where trial court under a newly adopted procedural statute would reach the same result).

.In a placental abruption, the placenta breaks away prematurely from the uterine wall depriving the baby of nourishment and oxygen.

. Appellants do not assert a claim for relief based upon Ms. Perez’s termination of employment by Bell South, or that the termination contributed to the premature delivery of Osmany.

. By separate order, the trial court held that Ms. Perez’s individual claim would be limited to derivative damages by virtue of worker’s compensation immunity. Our disposition of this case makes it unnecessary to consider this limitation.

. He testified as follows during inquiry by defense counsel:
Q. So there's really no way of ever knowing what caused this condition to occur in Maria, correct?
Mr. Anthony: Objection to the form.
The Witness: No, but I'll tell you what. If you compare this pregnancy—
Q. No, I was not correct, or no, I was—
A. No, you are correct. But I will tell you this, if I can add to that. It’s interesting that this pregnancy, when she was working, she made it to 25 or four or seven weeks with placental abruption.
(emphasis added).

. Dr. Cardella admitted that there are, in fact, known causes of placental abruption in the literature. These include cocaine abuse, smoking, hypertension, advanced maternal age, multiparity (someone who has had more than one child), placentation (placement of the placenta), uterine fibroids, and, of course, physical trauma such as spousal abuse. Workplace stress is not recognized in the field of medical science as one of the recognized causes of placental abruption.

. Ms. Perez’s second pregnancy was by no means a perfect comparator. By the time of her second pregnancy, she had contracted a sexually transmitted disease; she had vaginal bleeding with signs of a miscarriage at six and a half weeks; she suffered an infectious disease during the course of the pregnancy, probably food poisoning; and she remained obese — approximately 245 pounds.

. The pure-opinion testimony exception to the Frye test is not limited to medical expert testimony. See Jones v. Goodyear Tire & Rubber Co., 871 So.2d 899, 902-03 (Fla. 3d DCA 2003) (applying pure-opinion exception to expert testimony regarding tire defects).

. Section 90.702, as amended, reads as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:
(1) The testimony is based upon sufficient facts or data;
(2) The testimony is the product of reliable principles and methods; and
(3) The witness has applied the principles and methods reliably to the facts of the case.
(revisions emphasized).

.That this is so is further confirmed by an amendment made to section 90.704 of the Florida Statutes by the same chapter law. As *498 of July 1, 2013, section 90.704 was amended to read:
The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, the expert at or before the trial. If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence. Facts or data that are otherwise inadmissible may not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert’s opinion substantially outweighs their prejudicial effect.
(emphasis added).

. We recognize the Florida Supreme Court, not the Florida Legislature, is vested by the Florida Constitution with the right and obligation to adopt rules of practice and procedure for the courts of this state. Article V, § 2(a), Fla. Const. We take comfort here in the fact that the Florida Supreme Court periodically adopts all legislative changes to the Florida Evidence Code to the extent they are procedural, see In re Amendments to the Florida Evidence Code, 825 So.2d 339, 341 (Fla.2002), and has already stricken all references to the Frye test from the Florida Rules of Juvenile Procedure and adopted the amendments to section 90.702. See In re Amendments to the Florida Rules of Juvenile Procedure, 123 So.3d 1128, 1129-30 (Fla.2013).

. This methodology is similarly described as "falsification.” See K. Popper, Conjectures and Refutations: The Growth of Scientific Knowledge 37 (5th ed. 1989) ("[T]he criterion of the scientific status of a theory is its falsifiability, or refutability or testability.”).

. Translated from the Latin, post hoc ergo propter hoc literally means "after this, therefore because of this." Black's Law Dictionary 1285 (9th ed. 2009).