PEOPLE v BAUDER

Docket No. 256186. Submitted November 9, 2005, at Grand Rapids.
    Decided December 8, 2005, at 9:00 a.m. Leave to appeal sought.
  Steven L. Bauder was convicted by a jury in the St. Joseph Circuit
    Court of felony murder. The defendant appealed a decision by the
    court, James P. Noecker, J., allowing the admission of hearsay
    evidence consisting of the victim's statements to friends, cowork-
    ers, and the defendant's relatives before her murder. The defen-
    dant also appealed the trial court's decisions denying defense
    counsel's pretrial motion to withdraw and a motion for mistrial on
    the basis of a courtroom outburst by the victim's brother.
      The Court of Appeals *held*:
      1. The trial court properly admitted the victim's out-of-court
    statements. The victim's statements were not testimonial, so *Craw-
    ford v Washington*, 541 US 36 (2004), which held that testimonial
    hearsay evidence could only be admitted if the accused has had a prior
    opportunity for cross-examination and the declarant is unavailable to
    testify, does not apply. The statements were not ex parte examina-
    tions to be used as evidence against the accused, which the right to
    confrontation was meant to prohibit. The statements were not made
    to government officials with the intent to preserve evidence for later
    use in court. A prior statement given by a witness who was made
    unavailable by the wrongful conduct of a party is admissible against
    the party if the statement would have been admissible had the
    witness testified. The wrongful conduct need not have been designed
    to prevent the witness from testifying. The defendant, by his wrong-
    doing, equitably forfeited the constitutional right to confront the
    victim in court.
      2. The trial court admitted the victim's statements under MRE
    803(3) for the proper purposes of proving the victim's state of
    mind, showing domestic discord, and providing evidence of a
    motive for murder and of the defendant's intent, premeditation,
    and deliberation. While evidence of the defendant's sexual obses-
    sion with the victim may have been used for the improper purpose
    of showing propensity for criminal sexual conduct, the evidence
    was also relevant to the victim's desire to end the relationship and
    to lend credence to the claim that the victim resisted the defen-

dant's advances before her death. In any event, the trial court instructed the jury to limit use of the evidence to its proper purpose, and the jurors are presumed to follow the instruction.

3. Assuming that the trial court abused its discretion in admitting evidence of the defendant's sexual fetish because that evidence was more prejudicial than probative, the erroneous admission was not outcome determinative, in light of other evidence of the defendant's guilt, and does not require that the defendant's conviction be reversed.

4. The trial court did not abuse its discretion by denying defense counsel's pretrial motion to withdraw because good cause for a substitution of counsel did not exist. Although the defendant wanted a better plea bargain, the prosecutor stated that there would be no plea offer with a sentence of less than mandatory life. The defense counsel's failure to get a better plea bargain is not a legitimate difference in opinion on a fundamental trial tactic that would require a substitution of counsel.

5. The trial court did not abuse its discretion when it denied the defendant's motion for a mistrial relating to an outburst during trial by the victim's brother. A mistrial should only be granted for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial. The trial court twice questioned the jurors with regard to their ability to disregard the outburst and to remain fair and impartial, and it took meticulous steps to ensure that the defendant received a fair and impartial trial. The outburst was not so egregious that the prejudicial effect could not be cured.

Affirmed.

1. CONSTITUTIONAL LAW — CONFRONTATION CLAUSE — UNAVAILABLE WITNESS — WRONGFUL CAUSE OF UNAVAILABILITY.

Although the Sixth Amendment provides a criminal defendant the right to confront witnesses who may testify against that defendant, a prior statement given by a witness who was made unavailable by the wrongful conduct of a defendant is admissible against the defendant if the statement would have been admissible had the witness testified; the wrongful conduct need not have been designed to prevent the witness from testifying (US Const, Am VI).

2. EVIDENCE — MULTIPLE ADMISSIBILITY — PROPER PURPOSES — JURY INSTRUCTIONS.

Evidence that is properly admissible for one purpose need not be excluded because it is not admissible for another purpose; where admission would be relevant to both a proper purpose and an

improper purpose, counsel may request an instruction limiting the jury's use of the evidence to its proper purpose; jurors are presumed to follow the trial court's instructions (MRE 105).

3. ATTORNEY AND CLIENT — INDIGENT CRIMINAL DEFENDANTS — SUBSTITUTION OF COUNSEL — GOOD CAUSE.

An indigent defendant is guaranteed the right to counsel, but is not entitled to have the attorney of his or her choice appointed simply by requesting that the attorney originally appointed be replaced; appointment of a substitute counsel is warranted only upon a showing of good cause and where the substitution will not unreasonably disrupt the judicial process; good cause exists where legitimate differences of opinion develop between a defendant and his or her appointed counsel with regard to a fundamental trial tactic.

4. MOTIONS AND ORDERS — CRIMINAL MISTRIALS.

A mistrial in a criminal prosecution should only be granted for an irregularity that is prejudicial to the rights of the defendant and that impairs the defendant's ability to get a fair trial; when a motion for a mistrial is premised on the unsolicited outburst of a witness, it should be granted only where the comment is so egregious that the prejudicial effect cannot be cured.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Douglas K. Fisher*, Prosecuting Attorney, and *Eric Restuccia* and *William E. Molner*, Assistant Attorneys General, for the people.

*Bennett Law Office* (by *P. E. Bennett*) for the defendant.

Amicus Curiae:

*Stuart J. Dunnings, III*, and *Herbert R. Tanner, Jr.*, for the Prosecuting Attorneys Association of Michigan.

Before: BANDSTRA, P.J., and NEFF and MARKEY, JJ.

MARKEY, J. Defendant appeals by right his conviction of felony murder.[1] MCL 750.316(1)(b). Defendant ar-

---

[1] In addition to felony murder, the prosecutor charged defendant with "open murder," MCL 750.316(1)(a), MCL 767.44; and with first-degree

gues on appeal that he was denied a fair trial by the admission into evidence of numerous statements made by the victim in the weeks before her death. Because we find defendant's Confrontation Clause rights, US Const, Am VI, were not violated, and, because most of defendant's other evidentiary arguments were not preserved by specific objection below, we conclude plain error warranting reversal did not occur. Further, the trial court did not abuse its discretion by denying defense counsel's motion to withdraw or defendant's motion for a mistrial after the victim's brother briefly disrupted the trial with a courtroom outburst. We affirm.

I

A

Appellate review of unpreserved allegations of error is disfavored. *People v Carines*, 460 Mich 750, 761-762; 597 NW2d 130 (1999). The courts of this state have long recognized that, in general, an issue is not properly preserved for appeal if it is not raised before the trial court. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Further, with respect to preserving alleged error regarding the admission of evidence, MRE 103(a)(1) provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." Because the grounds for objection at trial and the grounds raised on appeal

criminal sexual conduct (CSC I), MCL 750.520b, as an habitual offender, MCL 769.10; and with other offenses. The jury also convicted defendant of second-degree murder, MCL 750.317, and CSC I, which the trial court dismissed, sentencing defendant to life in prison only for felony murder.

must be the same, an objection based on the rules of evidence will not necessarily preserve for appeal a Confrontation Clause objection. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). The converse applies to the case at bar.

At the beginning of a two-day pretrial hearing on the admissibly of the victim's statements, the prosecutor stated that he was relying on MRE 803(3), "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) . . . ," and on MRE 804(b)(6), "[a] statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." The trial court stated to defense counsel, "You oppose this, right?" Counsel answered:

> I oppose, yes, I oppose it, of course, I oppose it's [sic] admission because there is no chance to confront the actual declarant, [the victim], because she is unavailable. But I do recognize that there are exceptions to the hearsay rule, and we'll have to address this.

Further, although counsel stated he would respond after the prosecutor's offer of proof, by the conclusion of the two-day hearing, he did not. Instead, counsel requested two more weeks to research the prosecutor's theories of admissibility and file a brief. The record does not reflect that counsel filed such a brief, nor does it reflect any specific objection to the victim's hearsay statements on the basis of the rules of evidence that defendant now raises on appeal. At best, the record suggests that counsel may have objected to the hearsay off the record on the basis of MRE 403. Counsel remarked at a hearing on his motion to withdraw on the eve of trial that the parties were awaiting the trial

court's decision regarding admissibility of hearsay, which counsel stated was pending the court's review of the hearsay's "prejudicial versus probative" value. On the first day of trial after the jury was sworn and before opening statements, the trial court ruled that the hearsay evidence was generally admissible, and that the evidence was relevant and material to the charges against defendant. The trial court also recalled that "the only evidence that was identified as being potentially unfairly prejudicial was the evidence of anal intercourse, and the defendant's female clothing fetish." The court, however, ruled that the danger of unfair prejudice was far outweighed by the probative value of the evidence. In sum, defendant did not argue below that the hearsay was inadmissible because it was not relevant, MRE 402, did not argue that the evidence failed to meet the criteria for admissibility under MRE 803(3) or 804(4)(b)(6), and did not assert the hearsay was inadmissible character evidence, MRE 404.

We review the trial court's decision to admit or exclude evidence for a clear abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). An abuse of discretion exists only if an unprejudiced person, considering the facts on which the trial court acted, would say that there is no justification or excuse for the trial court's decision. *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996). A trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *Coy, supra* at 13.

When constitutional error occurs and is preserved, as defendant here alleges the admission of hearsay in violation of the right of confrontation to be such an error, a new trial must be ordered unless it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. *People*

*v Shepherd*, 472 Mich 343, 347; 697 NW2d 144 (2005).
On the other hand, ordinary trial error, even if pre-
served, will merit reversal only when, in the context of
the entire trial, it affirmatively appears more probable
than not that the error was outcome determinative.
*People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607
(1999).

Our review of alleged unpreserved error is limited to
determining whether a plain error affected substantial
rights. MRE 103(d); *Carines, supra* at 763-764. "First,
there must be an error; second, the error must be plain
(i.e., clear or obvious); and third, the error must affect
substantial rights (i.e., there must be a showing that
the error was outcome determinative)." *Id.* Further, we
may grant relief only when the plain error resulted in
the conviction of an actually innocent defendant or
seriously affected the fairness, integrity, or public repu-
tation of judicial proceedings, independent of defen-
dant's guilt or innocence. *Id.* at 763.

B

We first address defendant's constitutional claim
that the admission into evidence of statements the
victim made to friends, coworkers, and defendant's
relatives in the weeks before her death violated his
right to confront witnesses against him. Defendant
relies on *Crawford v Washington*, 541 US 36; 124 S Ct
1354; 158 L Ed 2d 177 (2004), which rejected the
reliability test established in *Ohio v Roberts*, 448 US 56,
66; 100 S Ct 2531; 65 L Ed 2d 597 (1980), with respect
to the admissibility of "testimonial" evidence. The
*Crawford* Court held that the Confrontation Clause
does not permit the admission in evidence of ex parte
"testimonial" statements, which the Court did not
precisely define, unless the accused has had a prior

opportunity for cross-examination and the declarant is unavailable. "Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford, supra* at 68.

But *Crawford* does not help defendant because we find that the victim's statements that were admitted in evidence were not "testimonial." None of the victim's statements at issue was the product of "*ex parte* examinations [to be used] as evidence against the accused," which the "right to confrontation was meant to prohibit . . . ." *Id.* at 50. Further, we believe the *Crawford* Court indicated that statements similar to those at issue here were not "testimonial" when the Court noted that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51.

Our conclusion that the victim's statements were not "testimonial" is further supported by this Court's decisions in *People v Walker*, 265 Mich App 530; 697 NW2d 159 (2005), lv gtd 472 Mich 928, and *People v Geno*, 261 Mich App 624; 683 NW2d 687 (2004). The *Geno* Court reviewed hearsay admitted under MRE 803(24) and found that a "child's statement . . . made to the executive director of the Children's Assessment Center, not to a government employee, and the child's answer to the question whether she had an 'owie' " was not testimonial. *Geno, supra* at 631. More on point is *Walker*, in which this Court held that a domestic violence victim's excited statements to a neighbor and to the first responding police officer while the victim was "hysterical . . . scared, crying, highly upset, and shaking" were properly admitted at trial under MRE 803(2). *Walker, supra* at 534-535. The

*Walker* Court held that the victim's statements were not "testimonial" within the meaning of *Crawford,* opining: "It is unlikely that someone would jump from a second-story balcony and run to the home of a neighbor she did not know, all with an eye toward developing testimony for subsequent prosecution." *Walker, supra* at 537.

In the present case, the trial court admitted the victim's statements to her friends, coworkers, former in-laws, and defendant's relatives. None of the witnesses to whom the victim made her declarations was a government official, and there is nothing to indicate that the statements were made with the intent to preserve evidence for later possible use in court. So, as in *Walker*[2] and *Geno,* we conclude the victim's statements here were not testimonial. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford, supra* at 68.

Moreover, although *Crawford* rejected the *Roberts* reliability test for testimonial evidence, the Court preserved the equitable doctrine—not based on the reliability of the evidence—that a party may waive Confrontation Clause rights by wrongdoing. Justice Scalia wrote that "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability." *Craw-*

---

[2] We acknowledge that the issue whether the victim's hearsay statements in *Walker* were "testimonial" in nature and thus inadmissible under the rule of *Crawford* is pending review in our Supreme Court. *People v Walker,* 472 Mich 928 (2005).

*ford, supra* at 62. Justice Scalia refers us to *Reynolds v United States,* 98 US (8 Otto) 145, 158-159; 25 L Ed 244 (1879), for a discussion of this doctrine.

In *Reynolds,* the defendant was charged with the offense of bigamy in the territory of Utah. At the defendant's trial, the testimony of the defendant's alleged second wife at a former proceeding was admitted in evidence because the defendant had refused to reveal her whereabouts to a process server attempting to serve her a subpoena. *Id.* at 159-160. Rejecting the defendant's Confrontation Clause claim, the *Reynolds* Court opined:

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated. [*Id.* at 158.]

The *Reynolds* Court explained that this "rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong . . . ." *Id.* at 159.

Although the doctrine of forfeiture by wrongdoing has been incorporated into the Federal Rules of Evidence[3]

---

[3] FRE 804(b)(6) provides that "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" is not subject to exclusion under the hearsay rule if the declarant is unavailable as a witness.

and the Michigan Rules of Evidence[4] in 1997 and 2001, respectively, the doctrine is not dependent on them for its application because the Sixth Amendment's protections are not dependent on "the vagaries of the rules of evidence." *Crawford, supra* at 61; *United States v Garcia-Meza*, 403 F3d 364, 370 (CA 6, 2005). Before 1997, not only the United States Supreme Court but also every federal Circuit Court of Appeals to consider the issue applied the equitable doctrine of forfeiture by wrongdoing. See *United States v Mastrangelo*, 693 F2d 269, 272-273 (CA 2, 1982), and *Steele v Taylor*, 684 F2d 1193, 1201 n 10 (CA 6, 1982). In *Steele*, the court, in discussing forfeiture by wrongdoing of the right of confrontation, observed that it had found no case "in which a court upon a finding of wrongful conduct has declined to admit prior statements that would have come in had the witness taken the stand," and stated the rule as: "A prior statement given by a witness made unavailable by the wrongful conduct of a party is admissible against the party if the statement would have been admissible had the witness testified." *Id.* at 1202.

In *Garcia-Meza*, the defendant became angry after his wife Kathleen danced with another man at a gathering of friends. *Garcia-Meza, supra* at 366. Although the defendant grabbed Kathleen by the hair, called her a bitch, and wrestled her to the floor, Kathleen managed to flip the defendant onto his back giving him a bloody lip. *Id.* Kathleen then went to her mother's home where she resided. Defendant later arrived and stabbed Kathleen to death when she refused to leave with him. *Id.* at

---

[4] MRE 804(b)(6) provides that "[a] statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" is not subject to exclusion under the hearsay rule if the declarant is unavailable as a witness.

367. At the defendant's trial, the district court admitted
evidence of defendant's beating of Kathleen five months
before her death to show motive, intent, and capacity to
commit murder pursuant to FRE 404(b). *Garcia-Meza,
supra* at 367-368. The court also permitted investigat-
ing police officers to testify regarding what Kathleen
told them about the prior beating, specifically, that the
defendant beat Kathleen because she had spoken to a
former boyfriend. *Id.* at 369. The court described Kath-
leen's statements as "excited utterances made minutes
after the assault . . . ." *Id.*

On appeal, although the defendant conceded the
statements were excited utterances, he argued their
admission in evidence violated his right to confronta-
tion. *Id.* The court held that it did not have to decide
under *Crawford* "whether a victim's excited utterance
made to an investigating police officer is testimonial, for
the Defendant has forfeited his right to confront Kath-
leen because his wrongdoing is responsible for her
unavailability." *Garcia-Meza, supra* at 370, citing *Craw-
ford, supra* at 62, and *Reynolds, supra* at 158-159. The
court noted that the "defendant admitted that he killed
Kathleen, thereby procuring her unavailability to tes-
tify," and that the issue at trial was "whether he acted
with premeditation to support a conviction of first-
degree murder." *Garcia-Meza, supra* at 370. The court
concluded that because "there is no doubt that the
Defendant is responsible for Kathleen's unavailabil-
ity . . . he has forfeited his right to confront her." *Id.*
Likewise, here, defendant admitted killing the victim,
contending at trial that the offense was not premedi-
tated or deliberate, and that vaginal penetration oc-
curred postmortem. The issue before the jury, as de-
fense counsel asserted in the opening statement, was
defendant's "degree of guilt." Under these circum-

stances, we agree with the court in *Garcia-Meza*; defendant has forfeited his constitutional right to confront the victim.

As in *Garcia-Meza*, we reach this conclusion without deciding whether the trial court clearly erred by finding that the victim was killed, at least in part, to preclude her from revealing domestic abuse. The trial court based its finding on testimony presented at the pretrial hearing regarding the admissibility of the hearsay evidence. On the basis of this preliminary finding of fact, the trial court ruled that MRE 804(b)(6), which plainly provides for forfeiture by "wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness," applied to allow admission of the hearsay evidence. See, e.g., *United States v Dhinsa*, 243 F3d 635, 654 (CA 2, 2001) (interpreting the nearly identical FRE 804[b][6] to require the government to show, preliminary to admission of hearsay under the rule, that the defendant was motivated in part by desire to silence the declarant). But as we have already noted, the determination whether defendant has forfeited his constitutional right of confrontation is an issue separate from whether a particular rule of evidence has been satisfied. The *Garcia-Meza* court directly addressed this issue, and we adopt that court's reasoning.

> The Defendant, however, argues that for the rule of forfeiture to apply, a defendant must have killed or otherwise prevented the witness from testifying with the specific intent to prevent her from testifying. Since he did not kill her with the specific intent to prevent her from testifying, the Defendant argues, he should not be found to have forfeited his right to confront her. There is no requirement that a defendant who prevents a witness from testifying against him through his own wrongdoing only forfeits his right to confront the witness where, in procuring the witness's unavailability, he intended to prevent the witness

from testifying. Though the Federal Rules of Evidence may contain such a requirement, *see* Fed. R. Evid. 804(b)(6), the right secured by the Sixth Amendment does not depend on, in the recent words of the Supreme Court, "the vagaries of the Rules of Evidence." *Crawford* [*supra* at 61]. The Supreme Court's recent affirmation of the "essentially equitable grounds" for the rule of forfeiture strongly suggests that the rule's applicability does not hinge on the wrongdoer's motive. The Defendant, regardless of whether he intended to prevent the witness from testifying against him or not, would benefit through his own wrongdoing if such a witness's statements could not be used against him, which the rule of forfeiture, based on the principles of equity, does not permit. [*Garcia-Meza, supra* at 370-371.]

Accordingly, regardless of whether the trial court correctly applied MRE 804(b)(6) on the facts of this case, we hold that defendant has forfeited his Confrontation Clause rights with regard to the victim's out-of-court statements.

C

Having concluded that defendant's preserved constitutional claim fails, we next address his unpreserved claims under the rules of evidence. We note that we are not bound by the reasoning of the trial court in admitting the victim's statements. This Court will not reverse a trial court decision when the lower court reaches the correct result even if for a wrong reason. *People v McLaughlin*, 258 Mich App 635, 652 n 7; 672 NW2d 860 (2003). Further, under the Michigan Rules of Evidence, evidence that is properly admissible for one purpose need not be excluded because it is not admissible for another purpose. See *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000) (discussing the theory of multiple admissibility). Of course, when evidence is relevant to both a proper purpose and an

improper purpose, counsel may request an instruction limiting the evidence to its proper purpose. *Id.*; MRE 105; see, also, *People v Moorer*, 262 Mich App 64, 69; 683 NW2d 736 (2004). Finally, under the theory of multiple admissibility, only one proper theory under which the evidence is admitted is required. *Starr, supra* at 501.

We find no plain error in the trial court's admission of the bulk of the victim's out-of-court statements. The trial court admitted the evidence under MRE 803(3) for the proper purposes of proving the victim's state of mind, specifically showing domestic discord, and, indirectly, for evidence of a motive for murder, i.e., evidence of defendant's intent, premeditation, and deliberation. In that regard, the trial court specifically relied on this Court's decision in *People v Ortiz*, 249 Mich App 297; 642 NW2d 417 (2002). In *Ortiz*, the victim had told others that she was afraid of the defendant, that she thought the defendant was stalking her, that the defendant physically assaulted her, that the defendant threatened to kill her, that the victim was changing her will, that the victim anticipated her death, and that the victim did not want to reconcile with defendant. *Id.* at 307. The statements in *Ortiz* are remarkably similar to the victim's statements in this case: she had said that she was fearful of defendant, that defendant had threatened to kill her, her son, and her ex-husband, that she was tired of defendant's incessant demands for all kinds of sex and defendant's forcing sex if she refused, that she wanted to end her relationship with defendant and reconcile with her ex-husband, that defendant was jealous of her ex-husband, and that defendant stalked and beat her. These statements were evidence of the victim's state of mind, her fear, her intent to resist sex, and her intent to end her relationship with defendant. The *Ortiz* Court's analysis is applicable to the victim's

statements here. That Court found no abuse of discretion by the trial court in admitting similar statements, opining as follows:

> Evidence of the victim's state of mind, evidence of the victim's plans, which demonstrated motive (the ending of the marriage and the tension between the victim and defendant), and evidence of statements that defendant made to cause the victim fear were admissible under MRE 803(3). They were relevant to numerous issues in the case, including the issues of motive, deliberation, and premeditation and the issue whether the victim would have engaged in consensual sexual relations with defendant the week before her death. [*Ortiz, supra* at 310.]

We acknowledge that some of the hearsay may have been improperly used to prove a fact that the declarant remembered, for example, that defendant was sexually obsessed with the victim and that defendant was jealous of the victim's ex-husband. See *Moorer, supra* at 73. Nevertheless, the hearsay also was relevant to the victim's intent to end her relationship with defendant and made it more likely that the victim might have resisted sex, thus leading to her murder. Furthermore, defendant admitted to the police he was jealous of the victim's ex-husband, and defense counsel admitted defendant was obsessed with the victim. Defense counsel used evidence of both defendant's obsession with the victim and defendant's jealousy to successfully argue that defendant did not premeditate and deliberate before killing the victim.

We are also troubled by the use of sexual obsession evidence as a motive to commit a CSC offense. Our Supreme Court has rejected the admission of evidence of "lustful disposition" for use as propensity evidence in criminal sexual conduct cases. *Sabin, supra* at 60-61 n 7. Nevertheless, we find no error warranting reversal because the evidence was also relevant to the victim's

desire to end the relationship and lent credence to the claim that the victim resisted defendant's advances before her death. Thus, the evidence was relevant to a motive for murder and indirectly relevant to a CSC offense by making a lack of consent more probable. Moreover, the trial court instructed the jury consistently with CJI2d 4-11 to limit the use of the evidence to its proper purpose.[5] Because "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors," *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003), we find that plain error did not affect defendant's substantial rights, *Coy, supra* at 12.

In sum, we find no plain, outcome-determinative error in the trial court's admission of the victim's statements to others shortly before her death. The evidence was generally admissible under MRE 803(3) to show the victim's state of mind, specifically her intent to end her relationship with defendant, to reconcile with her ex-husband, and to resist defendant's sexual

---

[5] The trial court instructed the jury:

You have heard evidence that was introduced to show that the defendant engaged in actions for which he is not on trial. I refer to testimony that [the victim] spoke to several acquaintances that the defendant made threats to her, and that he engaged in unwelcome sexual acts with her. If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show either that the defendant had a reason to commit the crime and/or that the defendant specifically meant to kill [the victim] and/or that the defendant acted purposefully; that is, not out of an uncontrollable passion. You must not consider this evidence for any other purpose.

For example, you must not decide that it shows that the defendant is a bad person, or that he is likely or prone to commit crime. You must not convict the defendant here because you think he is guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find him not guilty.

demands. The evidence was therefore relevant to a motive[6] for murder and indirectly relevant to defendant's intent and to whether defendant acted with premeditation and deliberation. Moreover, even if we were to conclude that the admission of the victim's hearsay statements was plain error, we would not reverse on this basis in light of the other properly admitted evidence that convinces us that the error did not result in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of defendant's innocence. *Carines, supra* at 763-764.

D

We next address defendant's claim that the trial court abused its discretion by admitting evidence that defendant had a sexual fetish regarding women's underwear and personal feminine hygiene products. As noted already, the record suggests that defendant preserved an objection to this evidence on the basis that its probative value was significantly exceeded by the danger of unfair prejudice. MRE 403. We begin our analysis of this issue by assuming, without deciding, that the trial court abused its discretion by allowing this sexual fetish evidence. Accordingly, the alleged error will merit reversal only if, when viewed it the context of the entire trial, it affirmatively appears more probable than not that the error was outcome determinative. *Lukity, supra* at 495-496.

It was undisputed at trial that defendant killed his girlfriend, with whom he lived, while she was lying on

---

[6] Proof of motive is always relevant in a prosecution for murder. *People v Rice (On Remand)*, 235 Mich App 429, 440; 597 NW2d 843 (1999).

the bed in the bedroom the couple shared in the victim's home. Where and when the murder occurred were established by both the victim's blood in the bedroom and the victim's son who testified that the victim and defendant were together in the victim's upstairs bedroom. The evening of the murder, the victim's son heard two loud bangs, like something heavy dropped on the floor. He did not hear his mother cry out or scream. A few minutes later when defendant came downstairs and was asked about the noise, he said he dropped a couple of things. Defendant admitted to the police that he struck the victim two or three times with a baseball bat. He also admitted to the police that he was jealous of the victim's ex-husband and that he might have "snapped." At trial, defense counsel acknowledged that defendant killed the victim, but argued the killing was not planned or premeditated; rather, counsel argued that defendant was obsessed with the victim and "snapped." Dr. Stephen Cohle, a forensic pathologist, testified that the victim died from severe head injuries (craniocerebral trauma) consistent with blows from a baseball bat. Dr. Cohle opined that "it would take an adult person using virtually all of his or her might to swing the bat to cause that kind of injury."

Dr. Cohle also testified that the victim sustained a vaginal injury that would have caused excruciating pain and was consistent with a baseball bat having been forced into her vagina. Defense counsel argued that the vaginal injury occurred after the victim's death. But Dr. Cohle concluded that the victim's vaginal injury occurred while she was still alive because of the condition of the tissue where the injury occurred. Further, two separate areas of blood saturation on the mattress in the bedroom where the murder occurred indicated the victim bled profusely from both her head and vagina.

Dr. Cohle testified that this evidence was consistent with his opinion that victim was alive when she sustained the vaginal injury.

We conclude, in light of the evidence summarized above, that any error in the admission of the evidence of defendant's having a sexual fetish was not outcome determinative. Therefore, error warranting reversal did not occur. MCL 769.26; MCR 2.613(A); *Lukity, supra* at 495-496.

II

Next, defendant argues that the trial court abused its discretion by denying defense counsel's pretrial motion to withdraw. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). Because good cause for substitution of counsel did not exist, we disagree.

An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. *Id.*, quoting *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). *People v Williams*, 386 Mich 565, 574; 194 NW2d 337 (1972). When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record. *People v Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973).

The record in the present case shows that defendant refused to communicate with defense counsel after counsel informed defendant that the prosecutor would not accept a plea to any charge less than first-degree murder. At the hearing on defense counsel's motion, the prosecutor confirmed that defense counsel attempted to negotiate a plea to a lesser charge and that there was no possibility of defendant receiving a plea offer with a sentence less than mandatory life in prison. The prosecutor reported at the hearing that "from the first day the position of our office, the position of the investigators, the position of the victim's family, the position of the community of support for abused women is that [defendant] will not receive any offer to plead guilty which does not include mandatory life in prison without the possibility of parole under any circumstances whatsoever." Given this strong language, the trial court noted that the prosecutor's position was unlikely to change even if new defense counsel were appointed. This record provides no legitimate difference in opinion on a fundamental trial tactic that would require substitution of counsel. Therefore, we conclude that the trial court did not abuse its discretion when it denied defense counsel's motion to withdraw as counsel.

III

Next, defendant argues that he was denied a fair and impartial trial after a courtroom outburst by the victim's brother. Defendant moved for a mistrial, which the trial court denied. We review for an abuse of discretion a trial court's decision on a motion for a mistrial. *Coy, supra* at 17. Here, the record indicates that despite the courtroom outburst, the trial court scrupulously acted to ensure that defendant's right to a fair and impartial trial was preserved. We therefore find

that the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

A trial court should grant a mistrial "only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Ortiz-Kehoe*, 237 Mich App 508, 514; 603 NW2d 802 (1999). When a motion for a mistrial is premised on the unsolicited outburst of a witness, it should be granted only where the comment is so egregious that the prejudicial effect cannot be cured. *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

We conclude that the courtroom disruption did not constitute adequate grounds for the trial court to grant a mistrial. The record shows that the trial court twice questioned the jurors regarding their ability to disregard the outburst and to remain fair and impartial. The court was also meticulous in the steps it took to ensure that defendant received a fair and impartial trial. In addition, the person yelled that defendant had killed his sister, and, here, defendant did not dispute that he killed the victim. Defense counsel only argued that defendant's crime was less than first-degree murder. While the outburst certainly momentarily disrupted the trial, it was not "so egregious that the prejudicial effect can be removed in no other way." *Id.* at 266. Further, the trial court instructed the jury that the outburst was not evidence. Jurors are presumed to follow their instructions, *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), and instructions are presumed to cure most errors, *Abraham, supra* at 279. Accordingly, the trial court did not abuse its discretion when it denied defendant's motion for a mistrial.

We affirm.