THOMAS, J.
 

 In this appeal, Daniel Chavez, Appellant, challenges his conviction for the first-degree murder of his wife, Kathy Chavez. He asserts that the trial court committed reversible error by admitting hearsay statements regarding his threats to harm his wife if she left the marriage. We reverse and remand for a new trial.
 

 We reverse because the evidentiary doctrine of “forfeiture by wrongdoing” has not been adopted by the legislature. Further, even if the common-law constitutional rule of forfeiture by wrongdoing is applicable, it does not allow admission of hearsay testimony
 
 sub judice,
 
 because the murder was not committed with the specific intent to prevent the victim from offering testimony. Although the forfeiture by wrongdoing doctrine is grounded in well-estab
 
 *50
 
 lished principles of equity and sound public policy, we are without authority to rely on it because of the statutory exclusion of hearsay evidence in the Florida Evidence Code.
 

 Despite the significant evidence of Appellant’s guilt in this case, we cannot find the error harmless under the standard established by the Florida Supreme Court in
 
 State v. DiGuilio,
 
 491 So.2d 1129, 1139 (Fla.1986). We affirm all other issues raised by Appellant.
 

 Facts
 

 Seven months after them marriage, Mrs. Chavez moved out of the marital residence, leaving behind her wedding ring. Mrs. Chavez told her mother, Teresa Hernanes, that Appellant told her that if he could not have her as his wife, then nobody else could; she told a friend that Appellant told her that he was going to stab her; and three weeks before her death, she told another friend that she and Appellant had argued and Appellant said that if she left him, he would stab her to death and no one would have her. Mrs. Chavez moved in with Patsy Haley, a friend to whom she also relayed Appellant’s threat that if he could not have her as his wife, then nobody would.
 

 On the day of her death, a Sunday, Mrs. Chavez was preparing to attend church with Haley and Haley’s mother, Frances Macarages. Around 9:30 a.m., as they were getting ready, Appellant arrived at Haley’s house. Haley told her that Appellant was at the house; appearing scared and upset, Mrs. Chavez responded that she did not want to talk to Appellant. Haley said if she went outside to talk to Appellant, Haley would call the police.
 

 Eventually, Mrs. Chavez went outside and met Appellant in the backyard, and Haley called 911. Witnesses inside the house heard the couple conversing in Spanish. Haley found her mother watching from a window and guided her into another room to avoid the situation. As they moved away from the window, they heard Mrs. Chavez repeatedly say, “No, Daniel. No Daniel.” Haley’s uncle, Frank Herrington, passed by the back door and heard the couple; from the tone, it sounded like they were engaged in an angry argument.
 

 Meanwhile, a deputy arrived at the home and Haley went out front to meet him. Inside the house, Macarages returned to the kitchen window and saw Appellant and his wife standing face-to-face. All of a sudden, Macarages witnessed Appellant stab himself with a knife. Both Appellant and Mrs. Chavez fell to the ground. Macarages and Herrington heard her say, “You stabbed me. You stabbed me.” Herrington ran from the kitchen into the backyard and threw a glass of water on Appellant. He then saw Appellant stab himself with a knife.
 

 Haley and the deputy heard Mrs. Chavez scream, and they ran to the backyard where they found her laying on the edge of the porch. She yelled, “He stabbed me. He has killed me, Ms. Patsy.” The deputy ran to move Appellant away from his wife. Mrs. Chavez was covered in blood, and an open, bloody pocketknife was lying in the grass.
 

 Mrs. Chavez did not survive the two stab wounds to her chest. Both stab wounds entered her chest, penetrating skin, fat, muscle, and the pericardium, the sack around the heart. One blow penetrated a rib, and either or both wounds penetrated her heart. The path of the blade was from front to back, progressing downward. According to the autopsy report, the wounds were inconsistent with an accidental cutting because they were both “going toward the heart and one is going
 
 *51
 
 through bone.... ” Thus, the death was ruled a homicide.
 

 By contrast, Appellant’s self-inflicted stab wounds were not life threatening.
 

 At trial, Appellant claimed that he did not intentionally Ml his wife; rather, he only intended to kill himself that day. Appellant testified that his only intent in going to Haley’s house was to see his wife because he missed her. He carried a knife because he always carried a pocketknife on his person. Appellant testified that during their conversation, he took out his pocketknife and threatened to commit suicide, and she pulled on his arm as he prepared to stab himself. Appellant testified that he tried to push her away, but ended up hitting her twice with the open knife.
 

 Analysis
 

 Standard of Revieiv
 

 “The trial court’s ruling on the admissibility of evidence will not be reversed absent an abuse of discretion.”
 
 Almond v. State,
 
 1 So.3d 1274, 1276 (Fla. 1st DCA 2009) (citing
 
 McCray v. State,
 
 919 So.2d 647, 649 (Fla. 1st DCA 2006)). However, a court’s discretion is limited by the evidence code and applicable case law, and a court’s interpretation of these authorities is reviewed
 
 de 'll,ovo. Id.
 
 Here, the trial court specifically admitted hearsay evidence of Appellant’s threats to harm his wife based on the legal doctrine of forfeiture by wrongdoing. Thus, our review here is
 
 de novo,
 
 contrary to the views expressed by both parties.
 

 The Evidentiary Doctrine of Forfeiture By Wrongdoing
 

 The hearsay statements at issue occurred during the testimony of several witnesses and related to Appellant’s purported threats. The trial court admitted these double hearsay statements on the grounds that, although the alleged threats were not admissible under the state of mind exception, they were admissible under the common-law hearsay exception of forfeiture by wrongdoing.
 

 Following a pretrial evidentiary hearing, the trial court found that the State had carried its burden by a preponderance of the evidence to establish that Appellant’s conduct resulted in Mrs. Chavez’s absence. Thus, the trial court ruled that the equitable common-law exception of forfeiture by wrongdoing applied to allow admission of the hearsay threats. Accordingly, the trial court found that the statements were admissible, because Appellant had forfeited both his confrontation and hearsay rights ■with respect to the victim’s statements about his alleged threats.
 

 We hold that the trial court’s ruling was in error as a matter of law, because the common-law hearsay exception of forfeiture by wrongdoing is not authorized under Florida’s Evidence Code, unlike numerous other states’ evidence codes.
 
 See e.g.
 
 Cal. Evid.Code § 1350; Del. R. Evid. 804(b)(6); Haw. R. Evid. 804(b)(7); Ky. R. Evid. 804(b)(5); Md. R. 5-804(b)(5); Md. Code Ann., Cts. & Jud. Proc. § 10-901; Mich. R. Evid. 804(b)(6); N.D.R. Evid. 804(b)(6); Ohio R. Evid. 804(B)(6); Or. Rev.Stat. Ann. § 40.465(3)(f); Pa. R. Evid. 804(b)(6); Tenn. R. Evid. 804(b)(6); Vt. R. Evid. 804(b)(6). Furthermore, Florida’s Evidence Code states in clear terms, “Except as provided by statute, hearsay evidence is inadmissible.” § 90.802, Fla. Stat.
 

 The legislature has declared that such hearsay is not admissible, precluding any contrary view we may have. Although section 90.102 states that common law that does not conflict with the Code is still applicable in Florida, section 90.802 prohibits courts from admitting hearsay “except as provided by statute.” Where two statutory provisions conflict, the specific
 
 *52
 
 provision controls the general provision.
 
 Murray v. Mariner Health,
 
 994 So.2d 1051, 1061 (Fla.2008). The Florida Evidence Code has expressly established that to be admissible, hearsay evidence must fall under a statutory exception, and the ádmission of hearsay evidence under the common-law doctrine of forfeiture by wrongdoing contradicts this express directive.
 

 Unlike in Florida, the doctrine of forfeiture by wrongdoing was codified in the federal courts as a hearsay exception in 1997. Federal Rule of Evidence 804(b)(6) makes admissible “[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was
 
 intended to, and did, procure the unavailability
 
 of the declarant as a witness.” (emphasis added). The only relevant provision in Florida’s Evidence Code states in section 90.804(1), Florida Statutes, that a declar-ant is
 
 not
 
 unavailable for purposes of the unavailable witness hearsay exception, when the declarant’s unavailability is “due to the procurement or wrongdoing of the party who is the
 
 proponent
 
 of his or her statement in preventing the witness from attending or testifying.” (emphasis added). Thus, the legislature precluded a hearsay exception where the proponent’s wrongdoing produced the witness’s absence; by contrast, the legislature has not provided a hearsay exception based on such wrongdoing.
 

 The State argues that the doctrine of forfeiture by wrongdoing is applicable in Florida as a common-law hearsay exception under section 90.102, Florida Statutes, which provides that the Florida Evidence Code replaces or supersedes only conflicting statutory or common law. We reject this argument.
 

 Even if section 90.802 did not prohibit application of the doctrine of forfeiture by wrongdoing as a hearsay exception, that common-law doctrine would not give us authority to affirm the admission of the hearsay threats. There is no evidence that Appellant killed his wife with the intent to make her unavailable as a witness. Despite this fact, the State urges this court to adopt a broad view of the doctrine of forfeiture by wrongdoing, and points to the United States Supreme Court case of
 
 Giles v. California,
 
 — U.S. -, -, 128 S.Ct. 2678, 2687, 171 L.Ed.2d 488 (2008), as support for its argument that the common-law doctrine applies, even without evidence of Appellant’s specific intent to make his wife unavailable as a witness.
 

 The Supreme Court’s decision in
 
 Giles
 
 provides a comprehensive overview of forfeiture by wrongdoing, although' it is not directly on point, because it addresses the doctrine’s application in the context of the Confrontation Clause rather than hearsay.
 
 Id.
 
 at 2681. The statements at issue in
 
 Giles
 
 were treated as testimonial statements subject to the Sixth Amendment.
 
 Id.
 
 at 2682. The Supreme Court held that an unavailable witness’s out-of-court
 
 testimonial
 
 statements were not admissible under the doctrine of forfeiture by wrongdoing
 
 unless the defendant specifically intended to prevent that witness from testifying. Id.
 
 at 2683-84, 2686-87, 2693. In light of
 
 Giles,
 
 the State argues that a broader version of the doctrine applies here to permit admissibility of the hearsay statements because they are
 
 non-testimonial,
 
 and thus not subject to the requirement that the defendant intended to prevent the declarant from testifying.
 

 Even though there is a distinction between testimonial statements subject to the Sixth Amendment and non-testimonial statements subject to the evidentiary rules involving hearsay, a close reading of
 
 Giles
 
 indicates that the common-law doctrine of forfeiture by wrongdoing would apply simi
 
 *53
 
 larly to non-testimonial statements. Specifically, in
 
 Giles,
 
 the Supreme Court examined the roots and application of the common law doctrine, noting, “[t]he terms used to define the scope of the forfeiture rule suggest that the exception applied only when the defendant engaged in conduct
 
 designed
 
 to prevent the witness from testifying,” and
 

 [t]he manner in which the rule was applied makes plain that unconfronted testimony would
 
 not
 
 be admitted without a showing that the defendant intended to prevent a witness from testifying. In cases where the evidence suggested that the defendant had caused a person to be absent, but had not done so to prevent the person from testifying — as in the typical murder case involving ac-cusatorial statements by the victim — the testimony was excluded unless it was confronted or fell within the dying-declaration exception.
 

 Id.
 
 at 2683, 2684 (emphasis in original).
 

 Accordingly, even if the common-law exception of forfeiture by wrongdoing was applicable in Florida as a hearsay exception, it would not apply in the present case where there was no evidence presented that Appellant acted with the intent to prevent his wife from testifying.
 

 In light of the statutory exclusion of such testimony, we must decline to create a broad rule allowing the admission of such testimony. We note that our view is consistent with the view of other jurisdictions that the doctrine requires the State prove the specific intent of preventing the witness from testifying, as recognized in the Confrontation Clause context in
 
 Giles.
 
 128 S.Ct. at 2688 n. 2 (“Only a single state evidentiary code appears to contain a forfeiture rule broader than our holding in this case ... allow[s].”);
 
 see also
 
 Cal. Evid.Code § 1350(a)(1); Mich. R. Evid. 804(b)(6);
 
 People v. Stechly,
 
 225 Ill.2d 246, 312 Ill.Dec. 268, 870 N.E.2d 333, 349-50 (2007) (requiring specific intent to forfeit Confrontation Clause objection);
 
 People v. Geraci,
 
 85 N.Y.2d 359, 625 N.Y.S.2d 469, 649 N.E.2d 817, 822-23 (1995) (same);
 
 State v. Hand,
 
 107 Ohio St.3d 378, 840 N.E.2d 151, 170-72 (2006) (discussing that the forfeiture exception to hearsay rule requires some motive to prevent witness from testifying);
 
 see generally
 
 Timothy M. Moore,
 
 Forfeiture by Wrongdoing: A Survey and Argument for its Place in Florida,
 
 9 Fla. Coastal L.Rev. 525, 539-41 n. 84 (2008).
 

 We acknowledge that there are jurisdictions that recognize a broader view of this doctrine.
 
 See Roberts v. State,
 
 894 N.E.2d 1018 (Ind.App.2008) (holding that “a party, who has rendered a witness unavailable for cross-examination through a criminal act, including homicide, may not object to the introduction of hearsay statements by the witness as being inadmissible”);
 
 State v. Mason,
 
 160 Wash.2d 910, 162 P.3d 396 (2007) (holding that equity compelled the adoption of the doctrine of forfeiture by wrongdoing when the defendant was unable to confront a witness who was unavailable due to defendant’s own action);
 
 State v. Jensen,
 
 299 Wis.2d 267, 727 N.W.2d 518 (2007);
 
 People v. Bauder,
 
 269 Mich.App. 174, 712 N.W.2d 506 (2006). We must decline the invitation to adopt that view, however, because we find no historical or common-law grounding for such a view. In addition, we do not have the authority to make that decision.
 

 We note that if a broader -view of the forfeiture by wrongdoing doctrine was accepted by this court, we would be required to craft procedures to ensure the reliability of such statements, as well as a procedure to make a factual determination that the defendant had engaged in the wrongdoing. Thus, we defer to the legislature and the Florida Supreme Court, which possess the
 
 *54
 
 requisite power to amend substantive and procedural law.
 
 See, e.g., State v. Byrd,
 
 198 N.J. 319, 967 A.2d 285, 301-03 (2009) (referring a proposed rule creating a forfeiture by wrongdoing hearsay exception to the New Jersey Legislature).
 

 Other Grounds for Admission of the Threats
 

 The State further argues that the double-hearsay statements are also admissible under the state of mind exception found in section 90.803(3), Florida Statutes. We agree with the trial court’s ruling that the statements do not fall under this exception. Appellant noted at trial that he would not have testified but for the admission of the hearsay statements. Thus, the victim’s statements were not relevant to demonstrate her state of mind during the State’s case-in-chief.
 
 See Stoll v. State,
 
 762 So.2d 870, 875 (Fla.2000).
 

 Harmless Error Analysis
 

 Because the trial court erred in admitting the hearsay statements, its ruling is subject to an analysis for harmless error. The pertinent question in a harmless error analysis is not the sufficiency or quality of the remaining, properly admitted evidence; rather, it is “whether there is a reasonable possibility that the error affected the verdict.”
 
 DiGuilio,
 
 491 So.2d at 1139.
 

 In the present case, admission of the hearsay threats cannot be deemed harmless. The key issue at trial was whether Appellant had the requisite premeditation for first-degree murder. In light of the strong, prejudicial nature of the hearsay statements, we cannot say that them admission did not reasonably affect the jury’s guilty verdict for first-degree murder. Despite the significant evidence of guilt, the trial court’s error in admitting the statements was not harmless under the controlling precedent of
 
 DiGui-lio.
 
 Accordingly, we reverse Appellant’s conviction for first-degree murder and remand for a new trial.
 

 AFFIRMED in part, REVERSED in part, and REMANDED.
 

 WEBSTER and LEWIS, JJ., concur.