GROSS, J.
The trial court admitted evidence under a common law hearsay exception that was not a part of the Florida Evidence Code[1] at the time of trial. After the trial, the legislature amended the Evidence Code to include the very hearsay exception applied by the trial court. Under these circumstances, the error in invoking the exception at the trial does not justify reversal, since the same evidence would now be admissible at a second trial.
On July 14, 2007, armed gunmen robbed a carwash in Pompano Beach. A car sped into the parking lot. Five masked men with guns jumped out, searched people at the car wash, and took jewelry and money. They got back into the car and rushed away. Two of the victims, Edder Joseph and Rubens Saint Remy, followed the robbers’ car and called the police as they drove. Police pursued the getaway car on 1-95 and unsuccessfully tried to stop it. The robbers exited at Hollywood Boulevard and raced away until they violently collided with another vehicle. An occupant of the getaway car was killed. Persons in the other vehicle were injured. Appellant Guy Mortimer was in the suspect vehicle, where the police found ski masks, gloves, and property taken in the robbery. Mortimer’s DNA was found inside a ski mask and one of the gloves. Mortimer was charged with felony murder and robbery.
Prior to trial the State filed a motion to declare witness Edder Joseph “unavailable for trial,” claiming that Mortimer and his codefendants were part of the “Doom City” gang and had tampered with Joseph to the point he was afraid to testify. The State sought to introduce Joseph’s testimony from a codefendant’s bond hearing held pursuant to State v. Arthur, 390 So.2d 717 (Fla.1980), detailing the robbery at the car wash.
At a hearing on the motion, the State established that Mortimer and his codefen-dants were members of the Doom City gang and that the gang intended to assassinate anyone who testified at trial.
The State offered testimony about shootings that occurred on July 16, 2007, two days after the robbery. On that day, a man known to Joseph told him that “Doom City will not back down” and warned him to keep his mouth shut. A short time later, at 7:21 p.m., a codefen-dant’s brother fired numerous shots at Joseph in front of his home. At 11:38 p.m., Joseph was present at a drive-by shooting at another location. At 11:38 p.m., another drive-by shooting targeted Joseph’s residence.
From November 2007 to July 2008, Mortimer discussed Joseph on telephone calls from the jail, saying that he had been disrespected by Joseph, that Joseph was “the most important witness in his case,” that “all the soldiers” were “on the ground,” and that he should have been home already. On October 19, 2008, a *102 masked man shot Joseph in the face, knee, and ankle. He sustained severe injuries; the shooting left him with no vision in one eye and limited vision in the other.
The State’s investigator was unable to locate Joseph at his home to serve him with a trial subpoena. A person living at the house told him that Joseph had moved out. After the investigator made two more unfruitful trips to the house, Joseph called him and refused to testify. He said, “I’m not going to come in. I’m scared to death. I don’t want my children to be harmed. I don’t want my wife to be harmed. I just — I’m not doing anything. My life is too valuable.” Joseph refused to tell the investigator his location. He blamed the State for his injuries. The State’s witness subpoena was never served.
The trial court ruled that Joseph was unavailable because of Mortimer’s actions and allowed the prior testimony of Joseph to be read to the jury. The testimony detailed the robbery at the car wash and the subsequent chase on I-95.
Mortimer challenges the admission of Joseph’s prior testimony as hearsay. The State contends that the prior testimony was admissible under the common law hearsay exception of forfeiture by wrongdoing. This exception permits the introduction of out of court statements of a witness, where the witness is kept away from trial by the “means or procurement” of the defendant. Giles v. California, 554 U.S. 353, 359, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008).[2] For the exception to apply, the defendant must have “engaged in conduct designed to prevent the witness from testifying.” Id. The Federal Rules of Evidence codified the doctrine of forfeiture by wrongdoing in 1997 in Federal Rule of Evidence 804(b)(6). Id. at 367.
At the time of the trial in this case, unlike the Federal Rules of Evidence, no provision of the Florida Evidence Code authorized forfeiture by wrongdoing as an exception to the hearsay rule, which is set forth in section 90.802, Florida Statutes (2010). We agree with the first district’s analysis of the applicability of forfeiture by wrongdoing in Florida. See Chavez v. State, 25 So.3d 49, 51-52 (Fla. 1st DCA 2009). Section 90.802 plainly provides, “Except as provided by statute, hearsay evidence is inadmissible.” This means that the only exceptions to the hearsay rule in Florida are the ones recognized by statutes such as sections 90.803, 90.804, and 90.805, Florida Statutes (2010). See Chavez, 25 So.3d at 51-52. In this case, Joseph’s testimony from the bond hearing was hearsay, in that it was “offered in evidence to prove the truth of the matter[s] asserted.” § 90.801(1)(c), Fla. Stat. (2010). Because no statutory exception operated to authorize the admission of Joseph’s prior statement in evidence, the testimony was inadmissible at trial.
However, in 2012, the legislature codified the doctrine of forfeiture by wrongdoing by enacting section 90.804(2)(f) which provides:
(2) The following are not excluded under s. 90.802, provided that the declar-ant is unavailable as a witness:
[[Image here]]
(f) Statement offered against a party that wrongfully caused the de-clarant’s unavailability. — A state *103 ment offered against a party that wrongfully caused, or acquiesced in wrongfully causing, the declarant’s unavailability as a witness, and did so intending that result.
Ch. 2012-152, Laws of Florida. Section 90.804(2)(f) became effective in April, 2012. If section 90.804(2)(f) is applied at a retrial, Joseph’s testimony from the earlier bond hearing would be admissible.
Because section 90.804(2)© is a procedural statute, it would apply to a retrial if we were to reverse this case. A procedural statute is “to be applied retrospectively” and is “to be applied to pending cases.” Alamo Renir-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla.1994). Changes in laws regarding the admission of evidence, such as the creation of a new hearsay exception, are typically held to be procedural. See Glendening v. State, 536 So.2d 212, 215 (Fla.1988). Such a statutory change does not violate the prohibition against ex post facto laws because it does not “alter ‘substantial personal rights;”’ the crime with which the defendant was charged, the punishment prescribed for it, and “the quantity or the degree of proof necessary to establish his guilt, all remained] unaffected by” the enactment of section 90.804(2)(f). See id. Using this analysis, the Florida Supreme Court held that the application of another hearsay exception, section 90.803(23), Florida Statutes (1985) did not violate the prohibition against ex post facto laws when it was applied to a crime that occurred before the effective date of the statute. Id. at 214-15; see also McLean v. State, 854 So.2d 796, 803 (Fla. 2d DCA 2003) (holding that section 90.404(2)(b), involving a type of similar fact evidence, could be applied in a trial of a crime that occurred before the effective date of the statute).
A separate procedural/substantive issue arises as a result of article V, section 2(a) of the Florida Constitution, which provides that the “supreme court shall adopt rules for the practice and procedure in all courts.” As the fifth district has explained, the application of this provision means that
when the Legislature enacts a procedural rule of evidence, it must be adopted by the supreme court. See State v. McFadden, 772 So.2d 1209, 1213 (Fla.2000) (“As this Court has determined, section 90.610(1) involves a matter of court procedure solely within the province of this Court to enact pursuant to article V, section 2(a) of the Florida Constitution.”) (citing State v. Page, 449 So.2d 813, 815 (Fla.1984); Bobb v. State, 647 So.2d 881, 883 (Fla. 4th DCA 1994)); see also In re Florida Evidence Code, 372 So.2d 1369, 1369 (Fla.1979). In order to comply with its constitutional responsibility and recognizing that the evidence code contains both substantive and procedural provisions, the Florida Supreme Court regularly issues opinions adopting or refusing to adopt the procedural rules enacted as amendments to the Florida Evidence Code. See, e.g., In re Amendments to the Fla. Evidence Code, 782 So.2d 339 (Fla.2000)[.]
Crumbley v. State, 876 So.2d 599, 602-03 (Fla. 5th DCA 2004).
For the purpose of article V, section 2(a), we conclude that section 90.804(2)(f) is a procedural statute. “Practice and procedure” under the constitutional provision,
encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion.... [Practice and procedure] is the method of conducting litigation in *104 volving rights and corresponding defenses.
Massey v. David, 979 So.2d 931, 937 (Fla.2008) (quoting Haven Fed. Sav. & Loan Ass’n v. Kirian, 579 So.2d 730, 732 (Fla.1991)) (citations omitted). The Florida Supreme Court periodically adopts legislative changes to the evidence code “to the extent they are procedural” and usually specifies that the new rules “are effective on the dates they became law.” In re Amendments to the Florida Evidence Code, 825 So.2d 339, 341 (Fla.2002). We agree with the second district that the Supreme Court’s unwritten policy is “to allow trial courts to utilize a rule of evidence during the period between its legislative enactment and its adoption by the supreme court if the trial court determines that the new rule of evidence is procedural and does not violate the prohibition against ex post facto application.” McLean, 854 So.2d at 803 n. 7. “[Statutes are presumed constitutional and given effect until they are declared unconstitutional.” Mallory v. State, 866 So.2d 127, 128 (Fla. 4th DCA 2004).
It is almost certain that our Supreme Court will adopt section 90.804(2)(f). Long part of the common law tradition, this hearsay exception involves a “form[ ] of testimonial statements” that “were admitted at common law even though they were unconfronted.” Giles, 554 U.S. at 358. The basis for the hearsay exception is deeply rooted in equity and justice; the exception is directed at “conduct designed to prevent a witness from testifying. The absence of a forfeiture rule covering this sort of conduct would create an intolerable incentive for defendants to bribe, intimidate, or even kill witnesses against them.” Id. at 365. The exception has been adopted by the Federal Rules of Evidence. See Fed. R. Evid. 804(b)(6).
We are thus faced with a case where, if we were to reverse, testimony wrongly admitted in evidence at the first trial would be properly admitted at a second trial due to a procedural change in the law of evidence. Joseph’s prior testimony was cumulative to other evidence establishing the robbery at the car wash and the chase on 1-95. Under these circumstances, reversal is not justified because the error committed at trial neither affected “the substantial rights of the appellant,” § 924.33, Fla. Stat. (2010),[3] nor “resulted in a miscarriage of justice.” § 59.041, Fla. Stat. (2010).[4] As the Supreme Court has written in a different context, the “law does not exact in such a case the performance of a fruitless act.” Shaw v. Bill, 95 U.S. 10, 15, 24 L.Ed. 333 (1877).
We have considered Mortimer’s arguments concerning the admissibility of the 911 calls and find that they were admissible under subsections 90.803(1) or *105 90.808(2), Florida Statutes (2010).[5]

Affirmed.

LEVINE, J., and ROSENBERG, ROBIN L., Associate Judge, concur.

. Chapter 90, Florida Statutes (2010).

. We note that our reference to Giles v. California in Lucas v. State, 67 So.3d 332, 336 n. 1 (Fla. 4th DCA 2011), was not a recognition of forfeiture by wrongdoing as a hearsay exception in Florida, but was a ruling on the application of the Confrontation Clause as applied in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), to the testimonial statements made by the absent witness in Lucas to a police officer.

. Section 924.33, Florida Statutes (2010) provides:
No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.

. Section 59.041, Florida Statutes (2010) provides:
No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.

. In Petit v. State, 92 So.3d 906 (Fla. 4th DCA 2012), involving the trial of a codefendant, we held that the admission of the 911 calls and Joseph’s testimony from the bond hearing did not violate the Confrontation Clause.